<hr />

PEERLESS PATTERN CO. v. PICTORIAL REVIEW CO. et al.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. INJUNCTION (§ 56*)—INTERFERENCE WITH CONTRACTUAL RELATION.
 Plaintiff and defendant being engaged in the business of making paper patterns defendant hired plaintiff's manager, who had had access to card indexes containing the names and information concerning plaintiff's customers. Plaintiff claimed that this information was confidential, and that defendant and its old manager were using this information to lure away its customers, while defendant and manager claimed that the information was not confidential. *Held* that, in the absence of a clear showing that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

the manager was using in his new employment information acquired in confidence while in plaintiff's employ, an injunction pendente lite restraining defendant, its officers, and agents from interfering with the customers of plaintiff and from making use of knowledge or information gained by the manager was too broad.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 110; Dec. Dig. § 56.*]

2. INJUNCTION (§ 63*)—INTERFERENCE WITH CONTRACTUAL RELATION.

Where defendant hired a former employé of plaintiff, and used his knowledge to secure plaintiff's customers, an injunction pendente lite, restraining defendant from soliciting or filling orders for goods similar to plaintiff's from customers under contract to purchase from plaintiff, was not warranted; defendant being entitled to compete so long as the methods used were not unfair.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 63.*]

3. TORTS (§ 12*)—INTERFERENCE WITH CONTRACTUAL RELATION.

Where plaintiff and defendant were engaged in the same business, and plaintiff's contract with his customers allowed them to cancel the same, defendant, after cancellation, might enter into contracts with these customers, but was not entitled, by false statements and unfair means, to induce plaintiff's customers to break the contract, under penalty of being liable to respond in damages therefor.

[Ed. Note.—For other cases, see Torts, Dec. Dig. § 12.*]

4. INJUNCTION (§ 55*)—PRELIMINARY INJUNCTION—IRREPARABLE INJURY—INDUCING BREACH OF CONTRACT.

In an action to restrain defendant from diverting plaintiff's customers by false statements and unfair means, a showing of such unfair competition does not entitle plaintiff to an injunction pendente lite, unless it is also shown that the injury will be irreparable, and that an action for damages will afford inadequate relief.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 108, 109; Dec. Dig. § 55.*]

Appeal from Special Term, New York County.

Action by the Peerless Pattern Company against the Pictorial Review Company and another. From an order granting an injunction pendente lite and an order denying a motion to resettle such order, defendant named appeals. Order granting injunction reversed, and appeal from an order denying a motion to resettle dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Hugo H. Ritterbusch, for appellant.

Noah A. Stancliffe, for respondent.

SCOTT, J. This is an appeal from an order granting an injunction pendente lite restraining the defendant from interfering with plaintiff's business. The plaintiff and the defendant the Pictorial Review Company are both engaged in the business of selling paper patterns. The rivalry between them is evidently very keen, and the business seems to be conducted by both upon substantially the same lines. The method is to employ travelers who solicit contracts from storekeepers throughout the country. Plaintiff's contracts provide for the periodical shipment of patterns at an agreed price, with appropriate provision for the return and replacement of those which the merchant has been un-

able to sell.   The contracts are made for fixed periods, with the privilege to either party to cancel on 30 days notice.   Plaintiff keeps a card catalogue of the parties with whom it has contracts, together with certain particulars concerning the contents of each contract.

[1] Prior to March, 1911, defendant Dunigan was in plaintiff's employ as sales manager, and in this capacity naturally acquired knowledge of plaintiff's business, including the matters shown by the aforesaid card catalogue.   There is a dispute as to whether or not this card catalogue was kept as a secret and confidential record.   Plaintiff avers that it was.   Dunigan says that it was not, but was always open to the clerks and employés.   In March, 1911, Dunigan left plaintiff's employ and entered the employ of the defendant Pictorial Review Company, by whom he was employed as a traveler.   It does not appear that said Review Company did anything to induce Dunigan to leave plaintiff's employ, but as soon as he had entered into the employ of the Review Company a vigorous effort was made to divert plaintiff's trade to defendant.   One of the means employed to this end was an attempt to induce those with whom plaintiff had contracts to break or cancel such contracts.   In pursuance of this attempt there was sent to a number of plaintiff's customers a letter, signed by Dunigan, but in the name of the defendant Review Company and upon its letter heads, advising those to whom it was addressed at once to cancel the contracts with plaintiff and to enter into a contract with the defendant Review Company.   These letters evidenced a knowledge of the contracts with plaintiff which could only have been obtained by Dunigan while in plaintiff's employ.   It is also in evidence, but denied by Dunigan, that in his efforts to induce plaintiff's customers to break their contracts he made unfounded statements respecting the impending insolvency of plaintiff, and offered to defend the customer in any action that plaintiff might bring.

The first clause of the order appealed from restrains the defendants, and their officers, agents, and employés, "from interfering with the trade, custom, and good will of the plaintiff's business, and from making use of the knowledge or information gained from or contained in plaintiff's original compilation or collection of names and addresses of the merchants with whom plaintiff has contracts for the sale and distribution of the patterns and publications manufactured and sold by plaintiff."   We do not think that the case made by the motion papers is sufficiently strong to warrant an injunction pendente lite to the extent above quoted.   What the evidence on the trial may develop we cannot say.   But as the matter comes before us it does not clearly appear that defendants are making use of information acquired by Dunigan in confidence while in plaintiff's employ.   It is not charged that he made out or copied any lists of customers.   All that clearly appears is that he undertook to use in his new employment the knowledge he had acquired in the old.   This, if it involves no breach of confidence, is not unlawful; for equity has no power to compel a man who changes employers to wipe clean the slate of his memory.

[2] The second clause of the order restrains the defendants, their officers, agents, and employés, "from canvassing, soliciting, accepting or filling orders for ·goods similar in kind to those manufactured, distributed, or sold by the plaintiff, from the persons, firms, or corporations with whom plaintiff on March 7, 1911, had contracts for the distribution or sale of its patterns and publications, and from canvassing, soliciting, or accepting contracts from or making contracts with any such person, firm, or corporation prior to the time when plaintiff's several contracts with such persons, firms, or corporations shall by their terms terminate." This is entirely too broad. There is no such relation between plaintiff and defendants as to render it unlawful or inequitable for the defendant Review Company to enter into competition with plaintiff, even for the business of those who had formerly been plaintiff's customers, providing such competition is fairly and legally conducted.

[3, 4] The third clause of the order appealed from restrains the defendants, their officers, agents, and employés, "from endeavoring to induce or inducing by personal solicitation, by circular, or by other letters or writings, or by promises or agreements to indemnify the said persons, firms, or corporations against loss or liability or otherwise, the persons, firms, or corporations with whom the plaintiff on March 7, 1911, had contracts for the sale or distribution of its patterns and publications, to discontinue in whole or in part the purchase, display, or sale of plaintiff's patterns and publications, and from endeavoring to induce or inducing said persons, firms, or corporations to sell or distribute directly or indirectly patterns and publications, or either of them, made by any. person, firm, or corporation other than plaintiff." The evidence shows that all of plaintiff's contracts contained an optional 30 days' cancellation clause. If any merchant who had been a customer holding a contract on March 7, 1911, should, without fraudulent or unfair inducement by defendants, voluntarily cancel his contract with plaintiff, defendants would have an undoubted right thereafter to enter into a contract with him. What the defendants may not do, and this the evidence tends to show they have done in some cases, is to seek, by false statements and unfair means, to induce plaintiff's customers to break or cancel their contracts. Rice v. Manley, 66 N. Y. 82, 23 Am. Rep. 30; Am. Law Book Co. v. Ed. Thompson Co., 41 Misc. Rep. 396, 84 N. Y. Supp. 225. If defendants, by the use of fraudulent or illegal means have induced, or shall hereafter induce plaintiff's customers to break their contracts, which, but for defendant's interference they would have continued, plaintiffs have a remedy by an action for damages. In such a case the basis for injunctive relief would be the inadequacy of the equitable remedy. We find nothing in the papers now before us to indicate that full indemnity may not be recovered at law. Of course, it may appear differently upon the trial of the action; but, dealing solely with the facts now presented, we are of opinion that the plaintiffs do not establish a case which justifies the court in exercising its discretionary power to issue an injunction pendente lite.

It follows that the order appealed from, granting the injunction, must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, and the appeal from the order denying the motion to resettle dismissed. All concur.

---

### PENNSYLVANIA R. CO. v. MARSHALL.

(Supreme Court, Appellate Division, First Department.   December 1, 1911.)

CARRIERS (§ 100\*)—DEMURRAGE RULES—CONSTRUCTION—"TERMINAL."

A carrier adopted demurrage rules for coal cars at a terminal at which it maintained two yards for cars until called for. The yards were about four miles apart, and one yard was a mile and a half from dumping piers. The average time to take a car out of the yards and place it on the piers to unload was from 30 minutes to an hour. Both yards were used as the terminal point, and cars placed in either yard could be released when ordered by the shipper, and there was no evidence that, if the cars had been brought to the yard nearest to the dumping piers instead of to the other yard, the detention of the cars would have been less than it was. *Held* to justify a finding that both yards were a part of the "terminal," within the demurrage rules.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.\*]

Appeal from Trial Term, New York County.