to the court upon the previous motion and those which now exist is that there was then no action pending in the Dominion of Canada at the time the subpœna was issued. Since that time such an action has been commenced and is now pending. In view of these considerations I feel that the decision in the Matter of the Great Northern Construction Company, 50 Misc. Rep. 467, 100 N. Y. Supp. 564, should not be regarded by me as controlling.

Having reached the opinion that no valid reason is urged why the subpœna should be vacated, it follows that the motion to punish the witness McNaught for contempt must be granted, unless he shall purge himself of such contempt by answering the questions contained in the interrogatories at a time and place to be fixed in the order to be entered upon this decision.

Motion to vacate the subpœna is denied, and the motion to compel the witness to answer is granted, to the extent indicated in this opinion. Settle orders on notice.

---

### BOOSING v. DORMAN et al.

(Supreme Court, Appellate Division, Fourth Department. January 24, 1912.)

MASTER AND SERVANT (§ 60*)—FORMER EMPLOYÉS—SOLICITATION OF TRADE.

In the absence of express contract, a salesman who, through his employment, learns the names and addresses of his employer's customers and their individual preferences and the dates on which they are accustomed to buy and the grade of goods which they are in the habit of purchasing, and, generally, their financial standing, and also gains an influence with them, is not perpetually prevented from using such knowledge or exercising such influence for his own benefit and from soliciting trade of like character for himself from his former employer's customers.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 60.*]

Appeal from Judgment on Report of Referee.

Action by Daniel Boosing against Timothy Dorman and another. Complaint dismissed, and plaintiff appeals. Affirmed.

The following is the opinion of Kenefick, Referee, in the court below:

Upon the facts found in my decision there arises for determination the single question as to whether, in the absence of an express contract, a salesman who, while in the employ of his master and through such employment, learns the names and addresses of his master's customers and the individual preferences, traits, and characteristics of such customers and the dates on which they are accustomed to buy, and the kind and grade of goods which they are in the habit of purchasing, and the promptitude with which they pay their bills, and, generally, their financial credit and standing, and also gains an influence with them, is, on leaving the employ of the master, forever thereafter prohibited from using such knowledge or exercising such influence for his own benefit, and from soliciting trade of like character for himself from his former master's said customers.

Of the 107 customers whom Dorman was serving for plaintiff at the time his employment terminated, it appears that about 32 were new customers whom Dorman had secured for plaintiff during the course of his employment;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and it is fair to infer that the remaining 75 were customers of the plaintiff at the time Dorman entered his employ and that their names appeared on the route book which plaintiff turned over to Dorman when the latter began his employment. There is no substantial dispute as to the proposition that the entire 107 persons or firms were listed in the city directory as retail dealers in butter, eggs, etc.; that they conducted business places and publicly displayed the character of business in which they were engaged; that with the exception of 2 or 3 they were not exclusive customers of the plaintiff, but dealt more or less constantly with plaintiff's competitors in the butter and egg business; that 18 of said persons or firms were located on Washington Market, a public market in the city of Buffalo; and that substantially one-half in volume of the sales made by the defendant Dorman for the plaintiff while in his employ was to these dealers on Washington Market.

The precise question under such a state of facts as here developed does not seem to have been passed upon. Secret processes of manufacture confided to an employé in the course of his employment have been protected from disclosure or use by the employé, either for the benefit of himself or another after his employment had terminated. Even in the absence of an express contract, this is a property right for which the master is entitled to protection. Little v. Gallus, 4 App. Div. 569, 38 N. Y. Supp. 487.

I cannot see, however, that the information acquired by the defendant Dorman in serving the plaintiff's customers can be properly classified as a trade secret.

The plaintiff relies on the following two cases decided at Special Term in this district, namely: Witkop & Holmes Co. v. Boyce, 61 Misc. Rep. 126, 112 N. Y. Supp. 874, affirmed without opinion, 131 App. Div. 922, 115 N. Y. Supp. 1150; Witkop & Holmes Co. v. Boyce, 64 Misc. Rep. 374, 118 N. Y. Supp. 461.

In each of these cases the defendant, during his employment, had entered into an express written contract with the plaintiff not to engage in a similar business for a term of two years after his employment ceased and not to at any time furnish a list of the plaintiff's customers or information of any kind pertaining to the plaintiff's business to any competitor. It is true that the court in neither case based its decision in favor of the plaintiff upon the written contract but upon general equitable principles.

Aside, however, from the feature of an express contract, there were these distinguishing differences between the cases cited and the case at bar, namely:

(a) It appears in those cases that the plaintiff had, by means not only of its salesmen but through special canvassers, originated a list of some 10,000 names and addresses of private individuals who were attracted by the trading stamp feature of the business. It is obvious that such a list could only be secured by the expenditure of a large amount of time, effort, and money in gathering together such a vast list of consumers who desired to do business in this peculiar way. These customers were not classified as likely customers in any public directory. They were not discoverable by any public display of their willingness to deal on the trading stamp basis. They were not congregated together in any well-known place where thousands of people gathered daily to purchase supplies.

(b) It also appears in the cases cited that the customers were the exclusive customers of the plaintiff, and that their patronage was of a permanent character, in that their stamps were not redeemable for value until a certain quantity of goods had been purchased.

(c) In the cases above cited there seems to have been ample evidence of a conspiracy between the defendants and a competitor of the plaintiff to injure the plaintiff's business and divert the plaintiff's trade, and that the defendant, while still in the employ of the plaintiff, was turning over to plaintiff's competitor the names and addresses of plaintiff's customers and seeking to induce plaintiff's customers to divert their patronage to its competitor, and that plaintiff's competitor had taken up the partially filled trading stamp books of the plaintiff, in the hands of its customers, which were not yet redeemable, and had given in exchange therefor to the customers the

competitor's trading stamp books, of like value, so that no loss would be entailed by the customer in the exchange.

(d) In the Boyce Case, 61 Misc. Rep. 126, 112 N. Y. Supp. 874, the learned justice points out that the defendant was violating section 642 of the Penal Code.

The points above mentioned seem to me to clearly distinguish the Boyce Cases from the case in hand.

It is perfectly apparent that the 107 customers of plaintiff whom defendant had served while in his employ were prospective customers for any wholesale dealer in butter and eggs, and that their names and addresses were readily ascertainable from the public directory or from the public display of their business places. I cannot see, therefore, how a list of such customers can be classified as a trade secret. The other knowledge which Dorman acquired by calling upon these customers in the course of his employment, with regard to their habits of buying, their financial worth, and their individual characteristics and preferences, can hardly be denominated "trade secrets" which an employé is prohibited from using for his own benefit after the termination of his employment, in the absence of an express contract. The rule which appeals to me is well stated in the case of Gossard Co. v. Crosby, 132 Iowa, 155, 109 N. W. 483, 6 L. R. A. (N. S.) 1115, as follows:

"The employé leaving an employer's service cannot leave the experience or knowledge there acquired, and saving the matter of trade secrets, already mentioned, these are legitimate additions to her personal equipment, which she has a perfect right to use for her own benefit."

Express contracts in restraint of trade have been upheld where they were confined to a particular territory or covered a definite period of time, although the law generally does not favor such contracts. Secret processes of manufacture have been protected when they were the property of the master and the servant had acquired knowledge of them purely by reason of his employment. In this case we are asked to go further than any reported case, and to say that a salesman calling upon well-known dealers and soliciting orders and delivering goods for his master, and thereby acquiring a personal knowledge and influence with his customers, shall be forever, after the termination of his employment, debarred from dealing with the same customers for his own benefit. In other words, according as he is successful as a salesman in his master's employ, just so far is his sphere of usefulness limited should he embark on a business venture on his own account in the same line. I know of no principle of law which sustains such a theory, and, while an individual may expressly contract to restrain his activities in trade, there is no such contract implied in the ordinary contract of employment.

For the reasons above stated, the complaint should be dismissed, with costs.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Sullivan, Bagley & Wechter, for plaintiff.

Kellogg & Baker, for defendants.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Kenefick, Referee.