[Civ. No. 8225. First Appellate District, Division Two.—April 18, 1932.]

AVOCADO SALES COMPANY (a Corporation), Appellant, v. SAM A. WYSE et al., Respondents.

John W. Hart and Delvy T. Walton for Appellant.

Patterson, Bailey & Montgomery and Charles C. Montgomery for Respondents.

BURROUGHS, J., *pro tem.*—This is an appeal by plaintiff from a judgment denying the injunction prayed for and dissolving the temporary injunction previously issued.

The facts, as set out in the findings, are as follows: That one Joseph L. Brodkey, predecessor and founder of the Avocado Sales Company, the plaintiff in this action, had, between the dates of August, 1925, and January, 1928, built up a large and lucrative business in the sales of avocados in the city and county of Los Angeles, and that he did employ defendants Sam A. Wyse and Barney M. Rothschild in the months of November and September, 1926, respectively, on a commission basis to sell avocados in said territory; that each of these defendants had a certain district or territory over which he was required to canvass and call upon the customers of plaintiff on regular days; that the names and addresses of the customers and the particular days of the week upon which they should be called upon were known to each with other facts, information and knowledge connected with the sale of avocados, but that none of such information, knowledge or facts is of a confidential or secret character. Defendant Sam A. Wyse left the employ of the plaintiff on January 31, 1929, and immediately thereafter commenced a competitive business as the Avocado Wholesale Company, canvassing and soliciting the customers of plaintiff in the same district over which he worked as salesman for plaintiff. He stamped his fruit with the same size print, the same color ink (a vegetable ink prescribed by the pure food laws of the state), and used the same size boxes (a standard size used for packing avocados). The defendant did not intend to deceive nor did he deceive any customer into thinking that he was purchasing off the former employer, but, on the contrary, the customers at all times knew that they were purchasing from a rival company.

It was further found that on the twelfth day of March, 1929, the defendant Barney M. Rothschild left the employ of the plaintiff and entered the employ of the defendant

Sam A. Wyse; that he canvassed and solicited over the same territory previously canvassed and solicited by him as salesman of the plaintiff; that defendants had been introduced by plaintiff to many of his customers and that defendants secured for plaintiff other customers "by going down the street and using their eyesight and finding other retail stores, fruit stands, clubs, hotels and cafes which appeared to them would have use for avocados", and in a number of instances procured fruit-stands and markets not previously dealing in avocados.

The court found that the customers of the plaintiff to whom defendants sold are fruit-stands, grocery-stores and public markets with a few of higher class cafes, hotels and clubs; that said purchasers of avocados may be easily ascertained by anyone desiring to sell avocados wholesale; that such retail dealers in avocados are merchants whose names are readily ascertainable and whose places of business can be easily found by persons not possessed of such information as was given to defendants or ascertained by them during their employment by plaintiff; that the hotels, cafes and clubs included in plaintiff's list are of the higher class of such places and from their appearance and the character of their business may be readily known as purchasers of avocados; that "said customers do not now nor have they ever purchased exclusively of plaintiff, but buy from peddlers and dealers generally as the price and condition of the market require".

It is sought by this action to restrain defendants from canvassing or in any manner soliciting a certain list of customers in the territory formerly solicited by these defendants as employees of plaintiff, and the court found as follows: "That a selective list of customers in the district and territory solicited by defendants during the employment by plaintiff, numbers approximately 92 and contains some of the most desirable accounts which have been sold by plaintiff during the period of its activity. That the number of wholesale purchasers of avocados in the territory solicited by defendant Sam A. Wyse during his employment by plaintiff, including 62 of the names in plaintiff's selected list, is between 100 and 150; that the number of wholesale purchasers of avocados in the territory solicited by Barney M. Rothschild during his employment by plaintiff, includ-

ing 25 of those on plaintiff's selected list, is approximately 50. That the selected list of customers of plaintiff company is the bulk of the avocado trade in the city of Los Angeles and vicinity and particularly in the territory solicited by defendants.''

Appellant cites many California cases in which former salesmen have been restrained from soliciting the same districts for another employer. *Cornish* v. *Dickey*, 172 Cal. 120 [155 Pac. 629], holds that a bakery salesman can be enjoined from soliciting and supplying his former patrons with the products of its rival.

In *Empire Steam Laundry* v. *Lozier*, 165 Cal. 95 [Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159, 130 Pac. 1180], it was held that equity would properly enjoin a laundry wagon driver from soliciting or receiving, on behalf of another laundry, work from any of his former customers.

In *New Method Laundry Co.* v. *MacCann*, 174 Cal. 26 [Ann. Cas. 1918C, 1022, 161 Pac. 990, 991], a laundry solicitor is enjoined. In this decision it is said: ''It has been determined that if a person establishes a trade or business which depends for its continuance upon keeping secret the names of customers, or other valuable information known to such person, no agent or employee, having been entrusted with such secrets in the course of his employment, can thereafter utilize his secret knowledge against the interests or to the prejudice of such person.'' This conclusion was reached in *Empire Steam Laundry* v. *Lozier, supra.*

In this last-mentioned case, at page 102, the court quotes and approves the following language from *Witkop & Holmes Co.* v. *Boyce*, 61 Misc. Rep. 126 [112 N. Y. Supp. 874], as follows: ''In recent years there has been developed, by the adjudications of our courts and by legislation, a considerable body of law looking toward the protection of the business world against unfair competition, and if we correctly interpret these decisions a court of equity stands ready to restrain such acts. We, therefore, are of the opinion that, independent of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do. This arises out of a violation of duty having its origin in the relation of employer and employed, and an implied contract that an employee will not divulge

*confidential knowledge gained in the course of his employ-
ment, or use such information to his employer's prejudice.''*
(Italics ours.)

In *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697, at page 703
[275 Pac. 944, 947, 276 Pac. 995], it is said: ''We appre-
ciate the suggestion of counsel that great caution should be
practiced by the courts in the exercise of their power to
enjoin and restrain a person from pursuing any calling or
profession he may choose to follow. This right is a prop-
erty right and has ever been zealously guarded by courts of
equity. (*New Method Laundry Co.* v. *MacCann, supra.*)
It should not be taken from a person, except upon a clear
and most convincing showing that in exercising his right
to labor, he is violating an express duty he owes to others.''

*Dairy Dale Co.* v. *Azevedo,* 211 Cal. 344 [295 Pac. 10],
follows the cases cited above and affirms the granting of an
injunction against a former employee of plaintiff, who was
engaged in the business of selling and distributing milk and
other dairy products, from soliciting the patronage of cer-
tain customers of plaintiff. The fact that said defendant
was employed by plaintiff for a number of years, that in
the course of such employment he learned the names and
addresses and requirements of plaintiff's customers on cer-
tain routes, and that just prior to the termination of his
employment with plaintiff he commenced to solicit these
customers on behalf of a competitor of plaintiff presented
a proper case for an injunction. It was there said: ''It
is settled in this state that the names, addresses and require-
ments of an employer's customers on such a route, which
constitute part of the goodwill of the business, are trade
secrets; and equity will restrain their disclosure by an em-
ployee. We recently gave full consideration to this question
and restated the principles upon which such relief is
granted in *Pasadena Ice Co.* v. *Reeder,''* *supra.*

In 32 Corpus Juris, page 160, paragraph 217, after
setting out the rule followed in the cases cited *supra,* it is
said: ''On the other hand, in the absence of express con-
tract, equity will not enjoin an agent or servant, after
termination of his employment, from soliciting business from
the customers or patrons of his former principal or employer,
*where by so doing no business secret or trust which has
been reposed in him because of his relation as agent or*

*servant is violated;* but in such competition he must act with the utmost fairness, resolving every doubt in favor of his former employer, rather than against him." (Italics ours.)

The case of *Boosing* v. *Dorman,* 148 App. Div. 824 [133 N. Y. Supp. 910, 912], is cited as an example of the application of this latter part of the rule. In that case the court finding that the names of customers, retail dealers in butter and eggs, were all listed in public directories and were not under the facts shown trade secrets, went on to say: "The other knowledge which Dorman acquired by calling upon these customers in the course of his employment, with regard to their habits of buying, their financial worth, and their individual characteristics and preferences, can hardly be denominated 'trade secrets' which an employee is prohibited from using for his own benefit after the termination of his employment, in the absence of an express contract."

In another New York case, *Peerless Pattern Co.* v. *Pictorial Review Co.,* 147 App. Div. 715 [132 N. Y. Supp. 37, 39], the court says: "All that clearly appears is that he undertook to use in his new employment the knowledge he had acquired in the old. This, if it involves no breach of confidence, is not unlawful; for equity has no power to compel a man who changes employers to wipe clean the slate of his memory." It was further held that the defendant could "enter into competition with plaintiff, even for the business of those who had formerly been plaintiff's customers, providing such competition is fairly and legally conducted".

In all of the California cases cited, *supra,* a trade secret and trust has been violated. Lists of customers, whether in writing or in the memory of the agent, were secret lists and a trust reposed in the agent because of his relation to his principal has been violated. We have found no California case where an injunction was asked under the same statement of facts as in the case at bar; and in New York, where it was asked for under a very similar condition, it was refused.

In each of the California cases, *supra,* where an injunction was granted, the facts came directly under the rule as set out in 32 Corpus Juris, page 160, under the heading, "Improper Use of Information in the Nature of Trade

Secrets'' and under the affirmative part of said section. We believe that the case at bar comes squarely under the negative part of said section as quoted *supra*.

The facts in the case at bar are very similar to the facts in *Boosing* v. *Dorman, supra.*

Appellants stress the case of *Pasadena Ice Co.* v. *Reeder, supra,* saying, ''One of the defendants enjoined was a wholesaler, who in turn sold to retailers.'' In that case there was a most flagrant conspiracy to injure and destroy the business of the former employer. The defendant Reeder was assistant manager of the plaintiff company when he quit their employment and went into the ice business for himself under the name of the Purity Ice Company, and the other defendants were also former employees of the plaintiff company. Reeder sold ice in wholesale quantities to certain of these defendants who in turn would retail the ice thus purchased to individual customers. Each of these retailers owned the delivery truck used by him and retailed his ice direct to the consumer, and sold and delivered ice in the same territory in which he had worked as an employee of the plaintiff, and solicited the business and patronage of the former customers of plaintiff, whom he had formerly supplied with ice. In denying the petition for a rehearing the Supreme Court said that these defendants entered into a combination, ''having for its purpose and effect the creation of a competing business to that of their former employer through the combined use of such confidential information and business secrets of their said employer as they had each obtained in the course of their former employment''. And further, the court said: ''We are satisfied that such a combination as that shown to have existed among these several defendants, the direct object and effect of which is to injure or destroy the business of their former employer, comes clearly within the equitable principles relating to unfair competition in conformity with which the injunction here was, we think, properly issued.''

█ In all of the California cases in which the injunction has been granted the customers were individuals being ultimate consumers of commodities or individual customers of laundry, bread, ice or milk concerns, and the lists of names and addresses were secret lists; but can a list of grocery-stores, vegetable or fruit stands, etc., where avocados are

sold to the general public, where displays are made to attract the attention, be considered as anyone's private list? Can it constitute confidential information and a trade secret? Could not any salesman see at a glance where to attempt to sell his wares? Both the plaintiff and defendant are wholesale firms selling only to retailers and it is shown that these retailers are solicited by other firms and individual sellers. It is also generally known that the better class of hotels, cafes and clubs serve avocados. These people are not buying exclusively from one person or firm as in the cases heretofore before the court. It would be unusual for the people to patronize more than one laundryman, iceman or milkman, allowing him to solicit at their doors.

If the list, against which the plaintiff seeks to enjoin, is not confidential the plaintiff can have no proprietary interest therein. If the defendants had possessed no knowledge gained through their employment, would not the exercise of just ordinary perspicacity have sent them to these very places to solicit buyers? We think so.

This appellant is asking us to go further than any reported case has yet gone when it asks us to say that a salesman for a wholesale concern calling upon well-known retail dealers to solicit orders and deliver goods for his employer and thereby making personal friends and acquiring a personal knowledge of his customers shall be, after the termination of such employment, debarred from dealing with the same customers for his own benefit. As said in *Peerless Pattern Co.* v. *Pictorial Review, supra,* "Equity has no power to compel a man who changes employers to wipe clean the slate of his memory."

■ The facts do not show the violation of any business secret or trust reposed in these defendants because of their relation to plaintiff. The fact that the plaintiff and its predecessor in interest have devoted energy, time and money to advertise and increase the use of avocades and the local consumption thereof, does not entitle them to a monopoly. The information which the plaintiff claims to have given the defendants as to the manner of promoting sales generally by displaying pictures tending to show ways in which avocados might be used, recipes, etc., was for public dissemination. It was in no sense confidential matter; but rather, education for the general public which would in-

crease the retailers' business and therefore profit as many dealers as the retailer may buy from.

It is not shown, nor is it charged that defendants, since leaving plaintiff's employment have used any of plaintiff's advertising matter. It seems to be presented for the purpose only of showing how plaintiff, through defendants as his salesmen, advertised the use of avocados and increased the sales thereof and that defendants as a rival business are profiting by plaintiff's business energy, in that more people are using avocados than were acquainted with them when plaintiff commenced his business.

We think that a careful comparison of the facts in the case at bar with the facts shown in the cases cited in which the injunction has been granted will show that the case at bar is not one in which a restraining order should have been granted.

The judgment and order are affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 16, 1932.