[L. A. No. 18652. In Bank. Apr. 11, 1944.]

CONTINENTAL CAR-NA-VAR CORPORATION (a Corporation), Respondent, v. L. C. MOSELEY et al., Appellants.

Loeb & Loeb, Dwight W. Stephenson and Norman Newmark for Appellant.

Mills & Wood, Edward C. Mills and Carlton B. Wood for Respondent.

SHENK, J.—The plaintiff is an Indiana corporation engaged in the business of manufacturing, producing, buying and selling compounds for finishing, cleaning and treatment of floors and of tools and appliances for that purpose. It maintains an office in Los Angeles. From 1932 to March 31, 1941, defendant Moseley was the district manager for plaintiff under a written contract, which he terminated on the latter date. The defendant Franzus is a chemist who was employed by plaintiff in Indiana from September 1934 to July 1936. Thereafter until 1940 he was employed by Gerson-Stewart Corporation, an Ohio corporation. Prior to March 1941, defendants Moseley and Franzus and a Mr. Gerson of Gerson-Stewart Corporation, decided to form a corporation and to acquire the Bobrick Manufacturing Company, a concern doing business in Los Angeles. The Gerson-Stewart Pacific Corporation was formed in March, 1941, and commenced its business on April 1, 1941, the day following the termination of Moseley's contract with plaintiff.

About March 20, 1941, defendants Moseley and Franzus mailed a form letter to a large number of plaintiff's customers, advising that Moseley was leaving plaintiff's employ and would in the future be sales manager for defendant corporation, thanking them for past patronage and assuring them of "the same conscientious treatment and careful attention" to their future needs. Thereafter defendant Moseley and the new corporation solicited a large number of plaintiff's customers, to eighteen of whom they sold merchandise of the new corporation, the purposes of which products were the same as those of the products manufactured and sold by plaintiff in the territory.

Plaintiff by its action sought damages and an injunction against defendants' use of plaintiff's customers list and alleged trade secrets. Defendants answered. Under the pleadings the only issues involved were whether the list of customers of plaintiff was private and confidential and a trade secret; whether the use of the list by defendants constituted unfair competition, and whether plaintiff had been damaged by the activities of defendants.

The trial court found in favor of plaintiff on all issues. A special finding was made that plaintiff suffered damage in the sum of $343.34 by the acts of defendants in selling to eighteen of plaintiff's customers merchandise in the amount of $3,433.42, based upon its conclusion that defendants' net profit averaged 10 per cent of the amount of sales. The decree, in addition to the award of damages, permanently enjoined defendants from soliciting as a customer any person, firm or corporation in the given territory "who was, on or prior to March 31, 1941, a customer of plaintiff" for specified merchandise; from using any information or knowledge concerning plaintiff's customers or in any manner soliciting or taking away such customers of plaintiff, or in any manner attempting to induce said customers to withdraw their business from plaintiff; from divulging any information concerning any customers of plaintiff who were such on or prior to March 31, 1941; and from using or divulging any trade secrets regarding the composition of the products manufactured or sold by plaintiff.

With reference to the last portion of the injunction, there is nothing in the evidence to support the finding of the trial court that defendants used or might use any "secret process" of plaintiff. The mere fact that defendant Franzus was employed for twenty-two months by plaintiff, and as a result of that employment knew the formulae for plaintiff's products when he left plaintiff's employ in 1936 is not sufficient evidence from which an inference could be drawn that he was using or intended to use such formulae on behalf of the defendants. Plaintiff overlooks the fact that from 1936 to 1940 Franzus was a chemist in the employ of Gerson-Stewart Corporation, engaged in work similar in character to that done for plaintiff. The testimony of Franzus was that it was his practice to make improvements and changes in the formulae from time to time. There is nothing in the evidence

to show that the formulae used by plaintiff at the time of the commencement of this action were the same as those in use at the time Franzus was employed by it, or that the same as now used were known to Franzus. That defendant Franzus was entitled to make use of his general knowledge of chemistry to manufacture floor wax and kindred commodities for the defendant corporation so long as he did not transgress upon the "trade secrets" or secret formulae of plaintiff, may not be questioned. That he did any more than that is not borne out by evidence of any character in this case.

The question to be determined is whether a list of customers of plaintiff, compiled by defendant Moseley throughout the period of his association with plaintiff, which consists of 3 by 5 inch cards each bearing a customer's name, address and purchases of products, is "confidential" or a "trade secret" within the meaning of the California cases and under the circumstances here disclosed.

Under his contract with plaintiff, Moseley was designated a "contractor" and is so referred to in correspondence with plaintiff. He was specifically given the right to carry on his work by such method as he chose and to regulate his own working time. His compensation was in the form of commissions for sales made. He had no "route." During the years of his work for plaintiff, the latter supplied him with certain leads as to customers, and through personal solicitation Moseley procured other customers. He made a card index showing the name, address, date and amount of purchase and product purchased by each person to whom he made a sale. At the termination of his contract with plaintiff, there were between 500 and 600 of such cards. It is not contended that Moseley copied this list. It is conceded that from it he selected the names of many such firms and individuals and that he wrote to between 250 and 300 of them, advising that he was leaving plaintiff and assuming the position of sales manager of defendant corporation. After severing his connection with plaintiff, Moseley states that he solicited eighty-eight of the firms and individuals on plaintiff's list, out of whom he sold products to thirty-nine. Of the latter the trial court found sales to eighteen of products of the kind sold by plaintiff, and on this the award of damages was based.

The evidence was undisputed that the names and addresses of persons, firms and corporations using the type of products sold by plaintiff are commonly known to the trade, and that

they are called upon by salesmen for various companies. It was also shown that plaintiff in its advertising listed users of its products, including some in the area in question.

This case is readily distinguishable from the so-called "route" cases, where the business of serving the customer is based upon regular calls at definite periods, establishing a business relationship between the customer and the company, which, unless interfered with, normally will continue. Here there is no showing that in the normal course of events, plaintiff would have continued to sell to any of its customers on the list. In the "route" cases the services rendered or the products sold were essentially the same, and the quality of the service rendered is similar. In the case of a salesman in a commercial field, there is no assurance of an order unless he can satisfy the customer that his merchandise is better, cheaper or more salable than that of his competitor. The customer usually desires to examine, inspect and compare merchandise and prices offered to him. Each sale is a distinct transaction, not necessarily implying that another will follow. (*Colonial Laundries Inc.* v. *Henry,* 48 R.I. 332 [138 A. 47, 54 A.L.R. 343].)

Plaintiff's testimony did not disclose the particular time when sales were made to the purchasers listed. It merely was shown that sales had been made between April, 1937, and April, 1941, and it cannot be ascertained from the list whether one sale had been made, or whether repeat orders were received, or whether the customer was a regular user of plaintiff's products. The trial court, in its injunction decree, prohibited defendants from "soliciting as a customer of defendants any person, firm or corporation who was, on or prior to March 31, 1941, a customer of plaintiff," not distinguishing between a customer who might be deemed a regular customer and one who had perhaps made but one purchase over a period of four years.

Plaintiff had been in open competition with other floor wax manufacturers in the area for a number of years, and Moseley sold such products as he could in an open, competitive market. For this reason the list of customers could not be said to be a trade secret or to constitute "confidential" information.

The present case is similar to the case of *Avocado Sales Co.* v. *Wyse,* 122 Cal.App. 627 [10 P.2d 485], which involved

competitive sales of avocados to retailers. There the court distinguished cases involving laundry, bread, ice, milk, or similar services or deliveries where but one concern is usually patronized by a customer, and lists of names and addresses were considered secret and had the character of property. It differentiated concerns selling a commodity, whose customers were open to daily changes in selection of vendors from whom they would make purchases. Such purchasers, it held, could not comprise a confidential list of customers in which a proprietary interest might be claimed. It therefore refused to extend the rule to cover a case involving an open market with daily competition in the sale and purchase of a commodity where the purchaser was normally the customer of the vendor who offered the best grade at the lowest price on any day.

■ Equity will to the fullest extent protect the property rights of employers in their trade secrets and otherwise, but public policy and natural justice require that equity should also be solicitous for the right inherent in all people, not fettered by negative covenants upon their part to the contrary, to follow any of the common occupations of life.

■ Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted. (*New Method Laundry Co.* v. *MacCann,* 174 Cal. 26, 33 [161 P. 990, Ann.Cas. 1918C 1022].)

Under this salutary rule, the question then is whether defendants were guilty of unfair competition in soliciting the customers of plaintiff for business in competition with the latter. ■ It is the law that equity will intervene to restrain an employee from divulging confidential information gained in the course of his employment or using such information to his employer's prejudice. (*Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697, 702 [275 P. 944, 276 P. 995].) The courts regard as unfair competition, and will enjoin, the use by an employee to the prejudice of his former employer of the confidential information gained by the employee during his prior employment as to the business secrets of such employer. ■ But we are not here confronted with a situation such as existed in most, if not all, of the cases in which

injunctions have been granted and in which it appeared that the business of selling and serving the various customers of the employer was primarily a matter of friendly feeling between the customer and the employee on the route delivering the commodities sold or serviced. A reading of the record here shows that Moseley while employed by plaintiff solicited customers in competition with other firms engaged in the business of selling floor wax and other commodities for the treatment of floors; that such sales were not made because of Moseley's ''personal acquaintance with customers and knowledge of 'their respective places of residence, their peculiar likes and fancies and other characteristics, a knowledge of which would greatly aid them in securing and retaining the business of said former customers' '' (see *George* v. *Burdusis,* 21 Cal.2d 153, 160 [130 P.2d 399]; *Dairy Dale Co.* v. *Azevedo,* 211 Cal. 344, 346 [295 P. 10]), but rather upon the ability of plaintiff, through its salesman Moseley, to meet or excel, in the judgment of the customers, the quality, price and adaptability of similar products offered for sale to such customers by competitors of plaintiff. In other words, there was nothing ''exclusive'' in the business relationship existing between such customers and either plaintiff or its sales representative, Moseley. In *New Method Laundry Co.* v. *MacCann, supra,* at page 34, the language of *Boosing* v. *Dorman,* 148 App.Div. 824 [133 N.Y.S. 910], is quoted with approval. In that case, as here, the names of the plaintiff's customers, all potential buyers of compounds for finishing, cleaning and treating floors in buildings, were listed in public directories, and in which cited case it was said: '' 'The other knowledge which Dorman acquired by calling upon these customers in the course of his employment, with regard to their habits of buying, their financial worth, and their individual characteristics and preferences, can hardly be denominated ''trade secrets'' which an employee is prohibited from using for his own benefit after the termination of his employment, in the absence of an express contract.' ''

Under the rules laid down, and the undisputed facts in the present case, the defendants were free to solicit the former customers of plaintiff without restriction, so long as no unfair trade practices were indulged. The absence of such practices here as were present in *George* v. *Burdusis, supra,* and cases therein cited, takes this case out of the sphere of unfair

competition and entitled the defendants to solicit customers of plaintiff by and through any legitimate means open to other competitors.

The injunction issued by the trial court is not merely limited to an injunction against the use of trade secrets or confidential information in the solicitation of plaintiff's customers, or to the use of any "unfair" means in such solicitation. It constitutes a blanket prohibition against any solicitation whatever of plaintiff's customers and forever bars defendants from entering into the competitive market so far as those customers are concerned. This goes beyond the legitimate power of the court and the injunction should not stand.

This case is easily distinguishable from *Scavengers Protective Assn.* v. *Serv-U-Garbage Co.*, 218 Cal. 568 [24 P.2d 489], wherein was involved a list of "preferred customers" whose trade was especially profitable to the supplier of the service, and to whom special rates were given, knowledge of which was a trade secret and highly confidential.

The case of *Gloria Ice Cream & Milk Co.* v. *Cowan*, 2 Cal. 2d 460 [41 P.2d 340], was one in which the former employee threatened to and did leave the employment and proceed to sell the products of another dairy company to the plaintiff's customers, with intent to injure the plaintiff's business. In the present case the evidence is insufficient to establish any intention to injure the business of plaintiff, except such detriment as may ensue from the exercise of legitimate trade practices.

There is no evidence in the record which would uphold the finding of the trial court that the defendants "wrongfully conspired" to injure and destroy the business of plaintiff. In *Fidelity etc. Co.* v. *Federal etc. Co.*, 217 Cal. 307, 314 [18 P.2d 950], it was said: "That the defendants were free to leave the employ of plaintiff and engage in a similar business, there can be no doubt. For men to agree and plan to enter business as associates, even though they have a design to draw their patronage from many rivals, or all that a particular rival may have, does not constitute them conspirators. Practically every copartnership, corporation or private individual which enters into business does so with the intent of drawing all the business it possibly can from all competitors. If it were not so, there would be no such word as competition in business." In that case, the court recognized the difficulty of drawing the line between methods or acts which may

be denounced as conspiracies to acquire the business or any part of the business of competitors, and those which may be considered legitimate acts or methods of competition; also the difficulty in many cases for the law to determine whether an employee should be permitted to solicit the patrons of his former employer. As to the latter, it indicated that only where the employee is in the possession of secret information not readily accessible to others and acquired by reason of his employment, will courts afford injunctive relief.

Prior to his severance of relations with plaintiff, the only activity of defendant Moseley was the sending out of a form letter to certain customers of plaintiff. Under the holding in *Theodore* v. *Williams*, 44 Cal.App. 34, 37 [185 P. 1014], it must be said that Moseley had the right to advise the customers of plaintiff that he was severing his business relations with plaintiff and was engaging in business for himself. In that case it was held that a former employee of a laundry, who had associated himself with a rival employer, was justified in driving along the streets upon which customers of his prior employer resided, with his laundry wagon plainly labeled with a notice of his new business association, and that he had a right to advertise such fact in a newspaper.

The award of damages is not supported by the evidence. It is true that the evidence shows that the defendants sold merchandise to eighteen of plaintiff's former customers, amounting to $3,433.42, and that defendants' net profit averaged 10 per cent of the amount of the sale. There is no evidence, however, that had defendants not made such sales plaintiff would have benefited in any amount. Former customers of plaintiff testified that they had not made purchases from plaintiff since March, 1941, for the reason that plaintiff had increased its prices; others that since that time they had not been solicited for business. Plaintiff does not contend that defendants are its only competitors in the area in question, nor does plaintiff contend that it would have made the sales had defendants not done so. Evidence to establish profits must not be uncertain or speculative. This rule does not apply to uncertainty as to the amount of the profits which would have been derived, but to uncertainty or speculation as to whether the loss of profits was the result of the wrong and whether any such profits would have been derived at all. (25 C.J.S. 517.)

There is no substantial evidence in the record to support the findings that the defendants conspired unlawfully to interfere with or deprive plaintiff of its trade and customers, that the customers' list of plaintiff was confidential or a trade secret, that the defendants used the secret formulae of plaintiff, or that plaintiff suffered damage by reason of the actions of the defendants.

The judgment is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied May 4, 1944.