**Everett HEYMAN, d/b/a Pleasure Products Co., Plaintiff,**

v.

**AR. WINARICK, INC., Ar. Winarick, Inc., Dura-Gloss Division, Jules Winarick, Hugo L. Bell, et al., Defendants.**

United States District Court
S. D. New York.
July 13, 1962.

See also 166 F.Supp. 880.

Bass & Friend, New York City, for plaintiff (Solomon H. Friend, New York City, of counsel).

Blackman & Willner, New York City, for defendants (Harold J. Blackman, New York City, of counsel).

COOPER, District Judge.

This is an action for damages, an injunction, and an accounting of profits based upon alleged acts of unfair competition, misappropriation of trade secrets, unjust enrichment and breach of contract by defendants.

The complaint embodies five causes of action each of which is premised upon substantially the same facts. By stipulation, a sixth cause of action alleging a conspiracy involving defendant Hanley has been withdrawn. Jurisdiction in the case at bar rests upon diversity of citizenship, 28 U.S.C.A. § 1332.

Stripped of surplusage, the complaint alleges that defendants entered into a confidential relationship with plaintiff, obtained knowledge of the secret formula and ingredients of plaintiff's liquid nail hardener, as well as information regarding plaintiff's customers, and then wrongfully breached that confidence by using such knowledge and information to their own advantage and to plaintiff's detriment.

Plaintiff contends that in November, 1957, he disclosed the formula and ingredients of his product to defendants, in confidence, in connection with certain negotiations for the sale of his business. He also asserts that although defendants refused to purchase the business they nevertheless appropriated certain customer lists and other related information allegedly revealed to the individual defendants Bell and Winarick during the negotiations. In this regard, the complaint avers that defendants breached the confidence reposed in them by subsequently soliciting customers whose names plaintiff allegedly disclosed to them during the course of the discussions concerning the possible purchase of his business.

Further, plaintiff asserts that defendants copied his advertising format and phraseology, that the so-called "dip" technique in connection with his product has acquired a secondary meaning and is generally associated in the public mind with that product, and that defendants are thus wrongfully palming off their product as that of plaintiff.

The factual background of the case, painted in broad strokes, emerges as follows:

Since October, 1956, plaintiff, a citizen of California, has conducted a business involving the manufacture and merchandising of a liquid finger nail hardener called "It's a Pleasure." Designed to strengthen the finger nails by their daily immersion in a prepared solution, this product was sold at drug stores and cosmetic counters in various parts of the country. Plaintiff asserts that he discovered and originated the product after considerable experimentation and research, and that his product was the first commercial nail hardener to use the dip technique.

Defendant Ar. Winarick, Inc., a New York corporation in existence for approximately forty-five years, is a large cosmetics firm with a multi-million dollar annual volume of business. In addition to its extensive line of hair preparations and other toiletries, it also manufactures and sells various lines of nail polishes and other finger nail preparations and accessories.

Defendant Jules Winarick, the President of Ar. Winarick, Inc., and defendant Hugo L. Bell, its General Sales Manager, are citizens of New York and Connecticut, respectively. Defendant Hanley, a business broker and consultant retained by the Winarick company, is a citizen of New York. Hence, since plaintiff Heyman is a citizen of California, the requisite diversity of citizenship plainly exists.

On September 26, 1957, plaintiff advertised in the Wall Street Journal (West Coast Edition) an offer to sell his nail hardener business for $80,000. The advertisement stated:

"NEW COSMETIC MFG. BUS.
FOR SALE
LOS ANGELES

National Sales now about $60,000 a month. Net profit about 40%. C.P. A. audit shown only to financially qualified buyers. No promoters, please. Full Price $80,000.

Box 34–W
The Wall Street Journal
2999 W. 6th Street
Los Angeles 5, Calif."

Defendant Hanley brought this advertisement to the attention of Ar. Winarick, Inc. Thereafter, he contacted plaintiff in California and indicated that his client might possibly be interested in the purchase of Heyman's business. Heyman forwarded the financial statement of his business to Hanley. A short time later Jules Winarick asked the Winarick company's General Sales Manager, Bell, who was then in California on a business trip, to see Heyman and obtain some general information concerning the business advertised for sale.

On October 18, 1957, defendant Bell met Heyman in Los Angeles and talked with him for about half an hour about the business "in a general sort of a way." At that meeting, Heyman described in general terms the manufacturing and marketing facilities for his product. During the course of their discussion they also briefly talked about such matters as the volume of sales, inventories, the net profit, the general type of acceptance the product had achieved, the business potential, and the possible effect of increasing competition from a similar nail hardener called "Amazing," marketed by Lanolin Plus, Inc. at the same retail price.

Defendant Bell took a rather dubious view of the advisability of purchasing plaintiff's nail hardener business and reported this view to Jules Winarick in Miami, Florida, about a week after his initial conference with plaintiff.

Subsequently, however, Winarick decided to go out to Los Angeles with Bell and see for himself. As a result of other business, Winarick was delayed for a day; but Bell met Heyman again on either November 7th or 8th at the latter's offices in Los Angeles. On the occasion of this second visit, Bell told Heyman that Jules Winarick was still "interested" in the possible purchase of the business, that he was due to arrive in California the following day and that they would want to discuss the matter further then and examine "the general trend of the business." In this connection, Bell stated that he wanted to determine whether there had been a steady growth of the business up until that time. He explained that for this purpose he wished to analyze what had happened in eight or nine "trading areas" or cities—that is, to ascertain how much had been spent in the way of advertising in each city, when the advertising ran, when the initial sales occurred, and the extent of reorders after the initial purchases. In compliance with this request, Heyman thereupon supplied Bell

with certain information regarding the periods and amounts of advertising for "It's a Pleasure" and also the monthly orders of three or four customers in each of the eight cities. Bell concededly recorded this information on a separate sheet of paper for each city and subsequently went over these figures with Winarick.

On November 8th or 9th, plaintiff, Bell and Winarick met together and, in general, discussed certain aspects of plaintiff's business, including such matters as had been earlier discussed at Bell's previous meetings with Heyman. It is apparent that at this conference no immediate decision was made by Winarick as to whether he would recommend purchase of plaintiff's business. At the conclusion of the meeting, however, Winarick handed Heyman a document (Plaintiff's Exhibit 22) containing certain standard, general warranties which he stated would be essential prerequisites to any further consideration. This document can by no stretch of the imagination be deemed a contract. It consisted merely of certain points and representations that plaintiff would be required to put into any contract of sale if and when a deal were consummated.

Upon examining the document, plaintiff indicated that he would have no objection to incorporating such warranties in any future contract should an agreement be reached. Winarick told Heyman that he was returning to New York and would think the matter over and present the results of his conversation with plaintiff to the Board of Directors for its consideration. He promised to let plaintiff know of any decision with respect to further discussions or negotiations for the purchase of the business.

Shortly afterwards, on November 13, 1957, defendants sent a telegram to Heyman advising him that they no longer were interested in purchasing his business.

Some five months thereafter, in March 1958, the corporate defendant introduced on the market its own liquid nail hardener under the name of "Dura-Gloss Finger Nail Hardener." Defendant's product has been widely advertised and sells at a retail price which is approximately one-third that of plaintiff's product.

Plaintiff's major contentions are that during the course of the three meetings with defendants, he disclosed to them, in confidence, certain trade secrets, including the "formula" of his liquid nail hardener, as well as his "customer lists" and other information, and that defendants abused that confidence and appropriated such trade secrets to their own use and to plaintiff's detriment. Cf. Saul v. International Harvester Co., 276 F.2d 361 (7th Cir., 1960); Franke v. Wiltschek, 209 F.2d 493 (2nd Cir., 1953); Moore v. Ford Motor Co., 28 F.2d 529 (S.D.N.Y., 1928), aff'd 43 F.2d 685 (2nd Cir., 1930); Newell v. O. A. Newton & Son, Co., 104 F.Supp. 162, 165 (D.C., Del., 1952); RESTATEMENT, TORTS § 757 (1939).

Defendants Bell and Winarick admit that they were given certain general information concerning the business of plaintiff and that they were told something regarding the customers of plaintiff and the effectiveness of the product. They strenuously deny, however, that they were ever given any "formula" or any "customer lists" or that any so-called "trade secrets" of plaintiff's business were ever revealed to them. Further, they expressly allege that their product, "Dura-Gloss Finger Nail Hardener," was developed independently for them by Crag Products, Inc., and also that the "Dura-Gloss" nail hardener is not composed of the same ingredients as plaintiff's product.

Since jurisdiction in this case rests upon diversity of citizenship, 28 U.S.C.A. § 1332, the Court must draw the controlling principles of substantive law from the law of the forum, New York, including New York's rules of conflict of laws. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Court need not, however, attempt to decide in this case whether the New York courts would

82

look to the law of California, where the meetings took place, or to the law of New York, where the alleged breach of confidence supposedly occurred, since the same general principles prevail in both jurisdictions with respect to wrongful appropriations of trade secrets acquired in the course of a confidential relationship. Franke v. Wiltschek, supra, 209 F.2d at 495; Avocado Sales Co. v. Wyse, 122 Cal.App. 627, 10 P.2d 485 (1932); cf. also Smith v. Dravo, 203 F.2d 369, 373 (7th Cir., 1953).

■ It is evident that in the case at bar plaintiff retains the burden of sustaining his contentions with regard to disclosure of the "formula" and the "customer lists," as well as the existence of the underlying confidential relationship. De Filippis v. Chrysler Corp., 53 F.Supp. 977, 980–81 (S.D.N.Y., 1944), aff'd 159 F.2d 478 (2nd Cir., 1947), cert. denied 331 U.S. 848, 67 S.Ct. 1733, 91 L. Ed. 1857 (1947), rehearing denied 332 U.S. 786, 68 S.Ct. 34, 92 L.Ed. 369 (1947).

■ With respect to the alleged disclosure of plaintiff's "formula" even assuming the existence of a confidential relationship, the Court finds that plaintiff has failed to prove by a fair preponderance of the evidence that any such disclosure occurred. Plaintiff's allegations of disclosure of the formula or secret ingredients of his product plainly are not supported by the weight of the credible evidence.

Having observed the various witnesses and heard their sworn testimony, and having considered all of the evidence, I believe the testimony of defendants Bell and Winarick with respect to the lack of any disclosure of the formula or secret ingredients of plaintiff's product. This testimony was in accord with that of Melvin S. Kaye, the chemist who supervised new product development for Crag Products, Inc., a chemical firm retained by Ar. Winarick, Inc. for such purposes. Indeed, defendants' testimony in this respect was in considerable measure uncontradicted even by plaintiff's own

statements. Upon the basis of the entire record, therefore, the Court finds that plaintiff at no time disclosed the formula or secret ingredients of his product to defendants.

This finding of the Court is partly buttressed by the extensive evidence indicating the trial and error method which Ar. Winarick's chemists utilized in their development of a liquid nail hardener. Crag's chemists experienced repeated failures in their efforts on behalf of Winarick to produce a commercially acceptable liquid nail hardener, and since this occurred for several months subsequent to the California meetings in question, it affords further ground for concluding that the "formula" or secret ingredients of plaintiff's compound had at no time been divulged to defendants.

Thus, upon the trial, the evidence disclosed that the compound developed by defendants' chemists at first produced "too much foam", that a "fungus" or other type of organic growth appeared in it, and that it soon underwent discoloration, "changing from a rather bright reddish-orange color to a faded-out yellow". Moreover, despite numerous experiments and tests, defendants' chemists did not succeed in eliminating these unsatisfactory characteristics until the end of January 1958.

Both Bell and Jules Winarick testified unequivocally that at no time did plaintiff reveal the formula of his product or disclose any information regarding its ingredients. Kaye was equally firm in his testimony that in this connection he received "no formula information whatsoever * * * no ingredient information of any character." The record as a whole is fully consistent with this testimony.

Further, it may be noted that the representations or warranties which were to be embodied in any future contract in the event of an agreement to purchase the business provided (Plaintiff's Exhibit 22):

The seller agrees to acquaint the purchaser with the said formula

and the preparation thereof or any and all processes connected with the manufacture thereof.

Although unsigned, this representation appears cast in prospective terms and provides additional intimation that the formula and ingredients were not revealed and that such disclosures were contemplated only in the event of a subsequent agreement to purchase the business.

■ That defendants were interested in marketing a liquid nail hardener similar to "It's a Pleasure" can hardly be disputed. It is equally true, however, that when an article manufactured by some secret process, which is not the subject of a patent, is thrown upon the market, the whole world is at liberty to discover, if it can, by any fair means, what that process is, and when discovery is so made, to employ it in the manufacture of similar articles. Hence, in Tabor v. Hoffman, 118 N.Y. 30 at p. 36, 23 N. E. 12, 13 (1889), the New York Court of Appeals declared:

> "If a valuable medicine, not protected by patent is put upon the market, any one may, if he can by chemical analysis and a series of experiments, or by any other use of the medicine itself, aided by his own resources only, discover the ingredients and their proportions. If he thus finds out the secret of the proprietor, he may use it to any extent that he desires without danger of interference by the courts."

On the present state of the record, plaintiff has failed to establish any confidential disclosure of the formula or ingredients of his product by a fair preponderance of the credible evidence.

Even assuming, moreover, that a casual reference had been made to a "quaternary," this could not fairly be denominated a "trade secret," and evidently was not so regarded by any of the parties. See Mycalex Corp. v. Pemco Corp., 64 F.Supp. 420, 423 (D.C.Md., 1946).

■ Plaintiff's contention that defendants secured "trade secrets" in the form of "customer lists" and related information through an abuse of a confidential relationship likewise seems plainly untenable. Here also, to create an actionable wrong, the disclosure must have been made in the context of a confidential relationship. Newell v. O. A. Newton & Son, Co., supra, 104 F.Supp. at p. 165.

■ Plaintiff contends that such a confidential relationship existed between the parties at the time of the disclosures alleged, but the evidence suggests that the dealings between plaintiff and defendants were typical of those between a prospective vendor and vendee, that no confidential relationship ever came into being, and that the parties were dealing at arm's length. See Saul v. International Harvester Co., supra; Moore v. Ford Motor Co., supra; NIMS, THE LAW OF UNFAIR COMPETITION AND TRADEMARKS § 143a (4th Ed., 1947).

■ In any event, under the facts shown, I cannot see how the names of the several customers which were disclosed when defendants investigated into the wisdom of buying the business can be in any sense classified as "trade secrets." Boosing v. Dorman, 148 App.Div. 824 (4th Dept., 1912), 133 N.Y.S. 910. Defendants, who conducted an extensive business involving the sale of finger nail polish, already dealt with and had knowledge of the likely customers for the sale of a closely allied product such as nail hardener. Indeed, the names of drugstores and similar likely customers would appear and be classified as such in any public directory. Id.; Avocado Sales Co. v. Wyse, supra.

Further, plaintiff has failed to prove how his business was damaged as a consequence of the disclosure of the names of some of its customers and the related information in the course of the negotiations.

■ Plaintiff also alleges that the "dip" method is unique with him and that it has acquired a secondary mean-

ing. The record in no way supports these assertions. On the contrary, it appears that the "dip" method which plaintiff claims for his own has been used by several other companies for a number of years. Moreover, the fact that defendants' product has a completely different name and that the bottles are markedly different in appearance from those of plaintiff suggests that no confusion in the public mind is likely. Nor has any such "palming off" been shown.

The allegations with respect to the copying of advertisements likewise appear totally unfounded.

Plaintiff has in all respects failed to establish his causes of action by a fair preponderance of the evidence.

Accordingly, the complaint is dismissed.

Submit, on notice, formal findings of fact, conclusions of law and an order for judgment in conformity with the views expressed in this opinion.