[L. A. No. 9212. In Bank.—March 20, 1929.]

PASADENA ICE COMPANY (a Corporation), Respondent, v. J. WALLACE REEDER et al., Appellants.

Haas & Dunnigan and H. E. Forster for Appellants.

Sidney J. Parsons and Raymond G. Thompson for Respondent.

CURTIS, J.—The plaintiff is a corporation engaged in the business of selling and delivering ice in the city of Pasadena and neighboring communities. The defendants are all former employees of the plaintiff. The defendant Reeder entered plaintiff's employ in 1910 and continued therein until the fall of 1925. He worked for plaintiff in a number of different capacities during said time, but "in the office end of it." At the time he quit said employment he was assistant manager of the plaintiff company. In March, 1925, Reeder engaged in the ice business for himself in the city of Pasadena and carried on said business under the name of the Purity Ice Company. He may also have carried on said ice business under other names than the Purity Ice Company in connection with the other defendants, but this fact is not material. We will refer to his activities in the ice business in the city of Pasadena as all being carried on under the name of the Purity Ice Company. The defendant Ziesche was an employee of the plaintiff for a period of sixteen years, and during the last five years of his employment with the plaintiff was superintendent of delivery. He severed his connection with plaintiff in September, 1923, and became associated with the Purity Ice Company in March, 1925. In the absence of Mr. Reeder, Ziesche was in charge of the business of the Purity Ice Company, and designates himself as a "sort of a manager. I have not been given any title." The defendant Lyon was employed by the plaintiff as telephone operator from March, 1922, to August, 1924. Since the last-named date, and after Reeder began doing business as the Purity Ice Company, she has been employed by some of the defendants to assist them in soliciting orders for the sale and delivery of ice. The remaining defendants were employed by plaintiff as drivers of its several delivery trucks, and while in such employ had charge of various routes in the territory above described, in which the plaintiff sold and delivered ice to the residents and inhabitants thereof. The term of employment by plaintiff of these various defendants varied from ten or eleven years in some instances to a much shorter period of time in others. Practically all of them associated themselves with the Purity Ice Cream in March, 1925. At that time some of them had been out of the employ of the plaintiff for over a year, while others for a less period of time, and in

the case of the defendant Phelps, he quit plaintiff's employ in March, 1925, and immediately entered into a business arrangement with the Purity Ice Company. Under the plan adopted by Reeder in operating the business of the Purity Ice Company he would sell outright ice in wholesale quantities to persons who in turn would retail the ice thus purchased by them to individual customers, and it was in accordance with this plan that the individual defendants herein, other than Reeder, Ziesche and Lyon, became associated in business with the Purity Ice Company and thereafter carried on the business of selling and delivering ice to the inhabitants of the city of Pasadena and vicinity. Each of these defendants owned the delivery truck used by him in his business and bought ice direct from the Purity Ice Company in wholesale lots and then retailed it direct to consumers. Each of these defendants, while in the employ of plaintiff, had a separate district or territory which he supplied with ice, and after leaving plaintiff's employ and associating himself with the Purity Ice Company, as above set forth, he began the sale and delivery of ice in the same territory in which he had worked as an employee of the plaintiff, and solicited the business and patronage of the former customers of plaintiff, whom he had formerly supplied with ice.

The above facts were found by the trial court, and upon such findings the court entered its judgment permanently enjoining the defendants "from canvassing or soliciting the sale of ice from, or supplying ice to, any of the former customers of said plaintiff so canvassed or solicited, and heretofore served with ice by the plaintiff through the defendants, or any of them, or otherwise, during the time that the said defendants, or any of them, were in the employ of the plaintiff and selling and serving ice for the plaintiff as stated in plaintiff's amended complaint." From this judgment the defendants have appealed under the so-called alternative method in accordance with the provisions of section 953a of the Code of Civil Procedure.

Appellants' brief contains no supplement setting forth any of the evidence or other parts of the record on appeal. Practically none of the evidence is set forth in appellants' brief. Respondent in its brief takes the position that as the record stood at the time of the filing of its brief there was

nothing before the court for it to answer. To meet this objection the appellants in their reply brief printed the findings of the court and extracts from the evidence in the case, and ask to have these matters considered as if they had been made a part of their opening brief or had been included in a supplement thereto. No objection to this request has been made by the respondent and no motion has been made to dismiss the appeal for appellants' failure to comply with the provisions of section 953c, providing for the printing by the parties of such portions of the record as they desire to call to the attention of the court. While this practice is not to be commended, and should not be encouraged, in the absence of any objection by the respondent to the court's consideration of the portions of the evidence and of the record set forth in appellants' reply brief, we will treat the record before us for all purposes as if said matters had been incorporated in appellants' original brief. Notwithstanding respondent's contention that there was nothing before this court for it to answer, it has in its brief replied to the arguments made by the appellants for a reversal of the judgment. It in turn failed to set forth in its brief, or in any supplement thereto, any of the evidence or record in the action upon which it relied. Under these circumstances we must conclude that the respondent is content with the statement of the evidence and such additional matters as appear in appellants' reply brief, and that the same may be considered by us as the record on appeal herein. We have, however, not restricted our investigation of the record to that portion contained in the appellants' reply brief, but have looked into the reporter's transcript in an endeavor to ascertain the true facts of this case. This procedure, we think, is proper, at least under the circumstances of this particular case, where the parties have failed to set out in their briefs the record with any degree of completeness.

In the case of *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, 102 [Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159, 130 Pac. 1180, 1183], this court quoted with approval the following language from *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. Rep. 126 [112 N. Y. Supp. 874]: ''In recent years there has been developed, by the adjudications of our courts and by legislation, a considerable body of law looking toward the protection of the business world against unfair compe-

tition, and if we correctly interpret these decisions a court of equity stands ready to restrain such acts. We, therefore, are of the opinion that, independent of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do. This arises out of a violation of duty having its origin in the relation of employer and employed, and an implied contract that an employee will not divulge confidential knowledge gained in the course of his employment, or use such information to his employer's prejudice."

In the case of *Empire Steam Laundry* v. *Lozier, supra,* the trial court enjoined a former employee of the laundry company, who had accepted employment with a rival laundry, from in any manner soliciting or receiving laundry work from any of the persons who were, at the time the employee quit the employ of the plaintiff in said action, "customers of the plaintiff along the route assigned by plaintiff to defendant while the defendant was in the employment of plaintiff." This court affirmed the judgment of the trial court in that action. That case has been followed by the more recent cases of *Cornish* v. *Dickey,* 172 Cal. 120 [155 Pac. 629], *New Method Laundry Co.* v. *MacCann,* 174 Cal. 26 [Ann. Cas. 1918C, 1022, 161 Pac. 990], and *Mackechnie Bread Co.* v. *Huber,* 60 Cal. App. 539 [213 Pac. 285]. In the McCann case, however, the court limited the injunction to the "soliciting" of business, and refused to enjoin the defendant from the "receiving" of business voluntarily brought to him by patrons of his former employer. That case also quotes with approval the following language from the case of *People's Coat, Apron & Towel Supply Co.* v. *Light,* 171 App. Div. 671 [157 N. Y. Supp. 15]: "There is no evidence that Light had a written list of them [the plaintiff's customers]. There was in his head what was equivalent. They were on routes, in streets, and at numbers revealed to him through his service with plaintiff. Their faces were familiar to him, and their identity known because of such employment. He had entry and introduction, and solicited them, not as strangers, but as persons known to him. He used what he had gained through plaintiff to take away its customers."

■ Appellants concede the force and effect of these authorities and the applicability of the legal principles therein enunciated to the facts of the particular cases to which they were applied. They seek, however, to differentiate the present case from those just cited by the fact that the appellants here, or at least many of them, left the employ of respondent some time prior to their entering into business relations with the Purity Ice Company, and that in the case of some of the appellants more than a year elapsed from the time they ceased to be employees of the plaintiff until they associated themselves with a rival company. In this connection the appellants assert that the unfairness on the part of an employee soliciting business from the patrons of his former employer, and to prevent which a court of equity will interpose its restraining order, "would seem very largely to depend on whether the former employer had a reasonable opportunity and time within which to permit his help to become fully acquainted with the customers on the route in question before such customers were again solicited by his former servant or employee." We find no such distinction made in any of the cases, or other authorities dealing with this question. On the other hand, it is definitely stated, in practically every instance to which our attention has been called, that the unfair competition, against which the courts will protect the employer, consists in the use by the employee to the prejudice of his former employer of the confidential information gained by the employee during his prior employment as to the business secrets of his former employer. It is the wrongful use by the employee of the business secrets of the employer which the courts have held constitutes the injury to the employer. This injury may result as well after the employer has succeeded in securing new employees to take the place of his former ones as well as before. It may well be that the injury may not be as great in one instance as in the other, but so long as the employer sustains substantial injury in his business by such acts of his former employees, he is entitled to the protection afforded by the law in cases of that character.

■ We appreciate the suggestion of counsel that great caution should be practiced by the courts in the exercise of their power to enjoin and restrain a person from pursuing any calling or profession he may choose to follow. This

right is a property right and has ever been zealously guarded by courts of equity. (*New Method Laundry Co.* v. *Mac-Cann, supra.*) It should not be taken from a person, except upon a clear and most convincing showing that in exercising his right to labor, he is violating an express duty he owes to others. ■ Such a case we think has been made out by the respondent against the appellants in the present action. The evidence shows without contradiction that the organization perfected by the appellants, if permitted to function in the manner intended by its members, would work most serious injury to the business of the respondent. At the head of this organization is the appellant Reeder, who at the time he quit respondent's employ, and for some years prior thereto, was the assistant manager of the respondent. In such position he must have gained an intimate and complete knowledge of the business of respondent as carried on in the territory the appellants selected as the scene of their operations. As Mr. Reeder's chief assistant he selected the appellant Ziesche, who, for a number of years just prior to leaving the employment of the respondent, was superintendent of deliveries. In this position Ziesche must have become familiar with all the different routes over which the respondent operated, as well as the general needs and requirements of the customers served on these routes. The remaining appellants, except the appellant Lyon, were former delivery men of the respondent, each having had charge of a particular route. As such they became personally acquainted with the customers of the respondent, their respective places of residence, their peculiar likes and fancies and other characteristics, a knowledge of which would greatly aid them in securing and retaining the business of said former customers. These former delivery men under the plan of the organization selected their former routes and along said routes solicited customers in the territory where they sold and delivered ice for the respondent, and from respondent's former patrons. Undoubtedly the principal, if not the sole, purpose of assigning said delivery men to their old routes was to enable them to use the knowledge gained by them as employees of respondent in winning over to them the customers of the respondent and thus to take away and deprive the respondent of the business enjoyed by it along said routes. That this would result in serious dam-

age to respondent's business we think no one would deny or gainsay. That these acts of the appellants were a clear violation of the duty owed by them to their former employer we have no doubt, and, accordingly, were subject to be restrained by a court of equity. The above authorities, as well as others from text-writers and the courts of the different states furnish ample support for the judgment of the trial court.

Judgment affirmed.

Preston, J., Waste, C. J., Richards, J., Shenk, J., Seawell, J., and Langdon, J., concurred.

A petition for a rehearing was denied by the supreme court and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied. It sufficiently appears from the record that the individual defendants and appellants who were all former employees of the plaintiff and respondent entered into a combination to do business under the fictitious name of Purity Ice Company, having for its purpose and effect the creation of a competing business to that of their former employer through the combined use of such confidential information and business secrets of their said employer as they had each obtained in the course of their former employment. While not impinging upon the right of an employee to make appropriate use of his knowledge and experience gained in one employment in advancing his interests in entering other employment, we are satisfied that such a combination as that shown to have existed among these several defendants, the direct object and effect of which is to injure or destroy the business of their former employer, comes clearly within the equitable principles relating to unfair competition in conformity with which the injunction here was, we think, properly issued. The scope of such injunction was not brought into question upon this appeal until the presentation of the petition for rehearing and will not for that reason be given consideration thereof.

Seawell, J., dissented.