[S. F. No. 13936.   In Bank.—July 28, 1933.]

SCAVENGERS PROTECTIVE ASSOCIATION (a Corporation), Respondent, v. SERV–U–GARBAGE COMPANY (a Corporation) et al., Appellants.

Brobeck, Phleger & Harrison and Walter E. Hettman for Appellants.

Frank I. Barrett and John J. Barrett for Respondent.

LANGDON, J.—This is an appeal by defendants from a decree in favor of plaintiff, enjoining defendants from soliciting the scavenger business of persons and firms who were customers of plaintiff at the time certain defendants were in the employ of plaintiff.

Plaintiff is a corporation engaged in the garbage and scavenger business in the city and county of San Francisco, its business consisting of the collection and disposal of refuse, waste paper, bottles, junk, etc. It operates through scavengers and drivers assigned to specific routes throughout the city, who use the vehicles furnished by plaintiff, and whose duties include solicitation of customers, picking up of the garbage and other waste materials, and in most instances the collection of charges.

Defendant Cavagnaro was president of plaintiff corporation from January 1, 1920, to December 31, 1923; superintendent from January 1, 1924, to March 1, 1928, and general manager from March 1, 1928, to February 1, 1929. Defendant Ponzini was secretary of plaintiff from January 1, 1924, to March 1, 1928. Defendant Wilkinson was bookkeeper and assistant office manager from March 1, 1924, to February 15, 1929. Defendant Chiapellone was a driver and scavenger for plaintiff from June 1, 1923, to January 1, 1924, and president from January 1, 1925, to January 1, 1929. Defendant De Martini was a driver and scavenger for plaintiff from June 1, 1923, to February 18, 1929. Defendant Neri was never in plaintiff's employ. Defendant Serv–U–Garbage Company was incorporated February 6, 1929, and commenced operations in the scavenger business February 21, 1929. It does business also under the fictitious name of Pacific Waste Paper Stock Company. The organizers were defendants Ponzini, Wilkinson and Neri, who hold all of the stock. Defendant De Martini, upon leaving the employ of plaintiff, went to work for defendant company as a waste paper collector. The connection of defendants Cavagnaro and Chiapellone with defendant company is disputed, but there is abundant evidence that they were involved in and actively aided its formation and operations.

The trial court found, in substance, that plaintiff had, in connection with its business, certain valuable trade secrets, known to certain of the defendants; that these defendants

entered into a conspiracy with others to solicit customers of plaintiff, using the said trade secrets for such purpose; that in pursuance of this object, they organized the defendant corporation as a screen for their activities; and that they did, in fact, solicit such customers and in some cases received the business of said customers. Judgment was thereupon rendered, permanently enjoining defendants Cavagnaro, Ponzini, Wilkinson and Chiapellone, and their agents, from soliciting any garbage, junk, or other such commodities "from any of the customers of plaintiff with whom they became acquainted, or of whose address, or identity they learned, while in and by virtue of, and in the course of, their employment by or official position with plaintiff, or of whose identity or address they learned from any of their codefendants or fellow employees who learned the same while in, and by virtue of, and in the course of employment by or official position with plaintiff". These defendants were further enjoined from receiving any such solicited garbage, or divulging to the defendant company names or addresses of customers, or other trade secrets of plaintiff, acquired while in its employ. Defendants Serv–U–Garbage Company, and Pacific Waste Paper Stock Company were permanently enjoined from soliciting garbage, etc., from customers through knowledge acquired or communicated by the individual defendants as aforesaid, and from receiving said solicited garbage. Defendants Neri and De Martini were given judgment in their favor and against plaintiff for their costs. The appeal of defendant Chiapellone was dismissed, and the remaining appellants are Cavagnaro, Ponzini and Wilkinson.

Appellants contend that the evidence is wholly insufficient to support the findings and judgment. They call attention to certain well settled principles governing the granting of equitable relief in cases of this character, with which principles this court is in entire agreement. ■
The basic proposition is that equity will, at the instance of a former employer, enjoin competition by former employees when such competition involves the unfair or fraudulent use of trade secrets which constitute a valuable part of the good-will of the employer's business. The equitable power thus to prevent a person from freely carrying on a lawful business will be exercised with great caution. If, for

example, it appears that there were in fact no trade secrets or data regarded as confidential, or that such secrets existed but were unknown to the particular employee; or that no use was made of them by him in the solicitation of business, then no ground for an injunction exists. (See, generally, *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697 [275 Pac. 944, 276 Pac. 995]; *New Method Laundry Co.* v. *MacCann,* 174 Cal. 26 [161 Pac. 990, Ann. Cas. 1918C, 1022]; *Avocado Sales Co.* v. *Wyse,* 122 Cal. App. 627 [10 Pac. (2d) 485].) Such would be the case where the customers are not scattered members of the public whose identities and addresses are generally unknown, but are retail dealers whose shops are recognizable by anyone, who advertise their businesses openly, and whose identities and addresses can be readily ascertained by a total stranger, by simple observation, or by reference to telephone or business directories. (See *Avocado Sales Co.* v. *Wyse, supra;* see, also, *Newark Cleaning & Dyeing Works* v. *Gross,* 87 N. J. Eq. 406 [128 Atl. 789].)

With these principles in mind, we turn to the record to discover whether there is evidence first, that plaintiff owned valuable trade secrets known to those defendants who were its employees; and second, whether in soliciting business, defendants made use of these trade secrets. In our opinion the record sustains the findings and judgment of the court in this regard.

A number of witnesses, including some of the defendants, testified to the information concerning customers which had been compiled by plaintiff. It appears that plaintiff served some 30,000 persons and firms, through drivers and scavengers operating in various routes. The drivers kept ''Black Books'', in which were listed the names, addresses, rates, collection days, quantity of garbage and other waste material, accessibility of the refuse, its profitableness, etc. There were fifty-two of such books in current use. They were brought into the office periodically to be checked. The drivers were admonished to keep their contents secret. In addition to these collection books, there were similar records kept in the office, such as the ''Bill Book'' and ''Cash Book'', which contained names, addresses and rates; the ''Box of Cards'' and ''Recap Book'', containing similar information. Most of these records were installed by defendants Ponzini and Wilkinson, and were at all times open

to their inspection. Moreover, in many cases bills were mailed from the office, and checks were received there; complaints of customers as to rates or service were adjusted by telephone, mail and personal interviews at the office. At corporate or drivers' meetings, general business was discussed, including details concerning desirability and character of different customers. In short, the record conclusively shows that all of the appellants had abundant opportunity to familiarize themselves with all of the important details concerning the customers of plaintiff, and in many instances had personal contacts with them.

Appellants assert that there was nothing confidential in any of the information or sources of information alluded to. They argue that under the city ordinance, everyone is required to secure scavenger service; that practically all persons in the districts served by plaintiff without competition are its customers; that the rates are fixed by the ordinance; and that consequently, there is nothing confidential in the names, addresses or rates. On the matter of customers, the evidence shows, and the court found, that in many instances people do not employ a scavenger but dispose of their garbage in other ways, notwithstanding the ordinance. One scavenger estimated that on his route there were about 1700 customers, and 2,000 nonusers of the service. As to the rates, the ordinance prescribes a maximum, leaving the scavenger free to charge less if he desires, and in many cases, due to differentiating circumstances among customers, lower rates were charged by plaintiff. Besides, the ordinance rates are only applicable to "dwellings, households and apartment houses," and not, for example, to business firms.

Much more important, however, than the mere names, addresses and rates of ordinary users of scavenger service, was the confidential information relating to the "preferred customers" of plaintiff. It appears that from the refuse and discarded materials of some customers, a profit is made by salvage and resale of the commodities. Those customers who habitually offer waste paper and junk for collection are greatly prized, and the handling of their refuse constitutes the most valuable part of plaintiff's buisness. To some, very low rates are charged; to others, free service is given; and to others a bonus is paid for the privilege of removal.

The facts concerning these special customers, the usual quantity and value of the waste material collected from each, and specially adjusted schedule of charges and bonuses, are treated as highly confidential. Appellants seek to show that this information also is generally known, for the reason that department stores and printing firms are the customers of such special value. There is evidence, however, that while in general those businesses predominate in the list of preferred customers, not every department store and not every printing establishment is of equal value or is even a valuable customer; and that frequently other businesses are profitable sources of resalable waste material. There can be no doubt that the list of preferred customers, ascertained originally by continuous solicitation and investigation, and the specially arranged list of charges and bonuses, developed by long experience, constituted a trade secret of value. That this information was in great part known to defendants is indicated not only by the fact that the data was always available to them, but by the further fact that contracts with some 150 of the important customers were in Cavagnaro's name, and a written list thereof, prepared by Wilkinson, was kept in the office of plaintiff.

On the issue of solicitation, the evidence likewise warranted the findings of the court. Plaintiff called thirty-two of its customers as witnesses, and with a few exceptions they testified that they had been solicited by some one of the defendants, and many did in fact leave plaintiff and become customers of the defendant company. It is noteworthy that defendants selected in nearly all cases preferred customers of plaintiff having valuable resale materials, chiefly waste paper; and that they uniformly underbid plaintiff, or offered free service for the privilege of removal. While they claim that they solicited the better prospects only by use of the telephone directory and other such means, there are several instances where it was shown that this was not so.

Thus, in the matter of soliciting one Weisinger, a furrier, the witness testified that Wilkinson told him that he knew he was a customer of the plaintiff because of his (Wilkinson's) former position as bookkeeper. And in the attempt to secure a contract for the removal of materials at Fort Mason, Chiapellone, knowing of the value of this customer, obtained information from the driver as to the current

bonus paid by plaintiff, and thereupon the defendant company made a better bid. Other examples of the use of confidential information in their solicitation were before the court, and served to discredit the claim of defendants.

We need not go into detail on the further finding of conspiracy, although the record amply supports the trial court's conclusion that the defendants organized the Serv–U–Garbage Company as a cloak for their operations. Nor do we find any merit in the contention that plaintiff now has and is seeking to maintain a monopoly of the scavenger business in San Francisco. The facts as disclosed by the testimony, show that in the removal of garbage from dwellings and apartment houses, plaintiff operates without competition in a large number of districts, though in others, it competes with several firms. To operate in this phase of the business, a scavenger must secure a permit from the Board of Health; and the ordinance requires the granting of such a permit whenever twenty per cent of the residents of a district petition, alleging inadequate or improper service, or overcharging. But in the field of collecting waste paper, junk and other resalable materials, there is no legal restriction and plaintiff has numerous competitors.

A careful study of the record has convinced us that this case falls within the rules established by such decisions as *Pasadena Ice Co.* v. *Reeder, supra,* and not within the exceptions urged by appellants and discussed in *Avocado Sales Co.* v. *Wyse, supra.* The attack upon the findings and judgment is, we think, without substance.

The judgment is affirmed.

Thompson, J., Curtis, J., Seawell, J., Waste, C. J., and Spence, J., *pro tem.,* concurred.