[S. F. No. 16255. In Bank. Nov. 2, 1942.]

PETER GEORGE et al., Appellants, v. ALECK BURDU-SIS et al., Respondents.

Joseph A. Brown and A. E. Cross for Appellants.

Marvin E. Lewis for Respondents.

EDMONDS, J. — By their complaint, the appellants charged Aleck Burdusis, who is their former partner, with unfair competition following the sale to them of his interest in the partnership business. They were denied both injunctive relief and damages. Aleck Burdusis fared no better on his cross-complaint, which was based upon certain asserted activities of the appellants and false representations made by them, as a result of which he claims to have suffered loss of business and consequent damage. He did not appeal.

For a number of years the appellants were coowners of Stone Linen Supply Company. Under this trade name they supplied laundered aprons, gowns and towels to various business establishments, principally markets and grocery stores. In May, 1930, Aleck Burdusis entered the business as a copartner. Before that time he was a grocer. Each of the partners serviced a particular route, calling regularly on certain customers one or more times each week. A fourth route was serviced by Tom Burdusis, brother of Aleck. He had been employed continuously for three years when, on November 16, 1934, as a sequel to differences which had arisen among the partners, Aleck Burdusis sold his interest in the business to his partners.

By a bill of sale, Aleck Burdusis transferred to his former partners the good will and all of the property of the business, and the vendor's interest in four laundry route books. It also required him to "deliver up the route book in his possession." Another provision reads: "The vendor does not agree not to engage in the same or a similar business in San Francisco, Oakland, or elsewhere, nor that he will not solicit former customers of said firm for business."

After the sale, Tom Burdusis continued in the employ of the appellants, who carried on the business under the same name as before. Less than four weeks later, Aleck Burdusis went into business for himself under the trade name of ABC Linen Supply Company. A month later, Tom left his position with the Stone Linen Supply Company and went to work for his brother. On the following morning,

which was Saturday, he accompanied his brother Aleck over the route he had for three years served for the appellants on each Monday and obtained as customers 35 of the 37 persons or firms which had formerly patronized the partnership. On Monday, Tom called on the customers whom he had customarily served on Tuesday, and solicited their business for his brother. By the end of the week he had obtained 137 of the 160 customers served by him on the route of his former employers.

The appellants took prompt action. Three days after Tom Burdusis left their employment, they sued him and his brother. They charged that Tom, as the driver on one of their routes for three years, had confidential knowledge and information as to customers served on that route, their names, addresses, time and type of linen service; that a route book had been delivered to Tom for the purpose of aiding him, as an employee, in servicing the route; that he refused their request to surrender this route book when leaving their employ and stated that he had lost the book, whereas, in truth he had it and used the information the next day, in conjunction with Aleck, in unfair competition with them; and that Tom acted and conspired with his brother Aleck in soliciting their customers.

As to Aleck, the appellants alleged that for $7,500 they had bought his interest in and the good will of the partnership business, including the four routes by which its customers are supplied with permission to Aleck to reengage in business; that notwithstanding his sale to them, Aleck immediately began drawing off their customers on the route theretofore served by himself, using the knowledge obtained while a member of the partnership, and availing himself of the wrongdoing of Tom Burdusis. According to the complaint, their business "represents an investment in excess of $15,000, consisting of machinery, equipment and supplies . . . and by reason of the loss of trade already caused, the [appellants] have suffered loss, injury and damage in the sum of $5,000 and will continue to lose and suffer loss, injury and damage." They also asked for judgment against the Burdusis brothers for $5,000 for the route book and for costs of suit, and for an injunction restraining them from acts of unfair competition and from taking or accepting any business from persons who were their customers at the time when Tom Burdusis was working for them.

In answering this complaint, Aleck and Tom Burdusis denied that good will is a major asset of the Stone Linen

Supply Company or that they are injuring it, or that they ever entered into a conspiracy to deprive the appellants of their customers. They alleged that the firms which they obtained as customers are all butcher shops and markets open to the public and listed in various directories. Every shop where clerks wear aprons is a potential customer and a legitimate object of solicitation; and as any normally intelligent person might seek out and find such customers, their identity is not of a confidential nature. According to the pleading, service in the linen supply business is obtained and held chiefly as a matter of friendly feeling between the customer and the man on the route.

By way of cross-complaint, Aleck Burdusis alleged that he agreed to accept $7,500 instead of the $15,000 at which he valued his interest in Stone Linen Supply Company, upon the condition that the bill of sale should contain a clause giving him the privilege of engaging in the same business in San Francisco and soliciting the former customers of the Stone Linen Supply Company. After the sale, however, the appellants went to their former customers whose business had been obtained by Aleck and falsely and fraudulently misrepresented the terms of the sale by showing the customers their cancelled check for $7,500 and telling them that Aleck had agreed not to compete with them or solicit their former customers but had "double-crossed" his former associates by soliciting their former customers. By such misrepresentations, he continued, he lost not less than 20 of these customers. In an additional count of his cross-complaint, Aleck Burdusis charged that the appellants have, since the sale of his interest in Stone Linen Supply Company, unlawfully engaged in a price cutting campaign against him by means of which they offered their supplies to his customers at prices less than the fair cost of such service. In order to retain his customers, he likewise was compelled to reduce his prices. As a result of this price cutting campaign, concluded Aleck, he lost both customers and profits he would otherwise have made from the business. He therefore asked for an injunction restraining the appellants from making such misrepresentation or from quoting prices below the fair cost of the service, and for damages.

The trial court found for Aleck Burdusis on all issues presented by his cross-complaint, concluding that he had been damaged but failing to find the amount to which he is entitled. It is evident that the provision of the bill of sale by

which he reserved the right to reengage in business and to solicit former customers of the partnership is the basis for this determination. And apparently upon the theory that it gave Tom Burdusis specific authority to solicit former customers of the partnership for his brother, the trial court denied the appellants any relief against him.

As grounds for reversal, the appellants contend that the findings are inconsistent and conflicting, and, in some instances, are directly contrary to the evidence. They thus attack the finding that Aleck solicited former customers of the Stone Linen Supply Company by using his knowledge of the names and addresses of the customers but that such information was not acquired while a member of the partnership. And they claim as contrary to the evidence the finding that Tom Burdusis went out with his brother on the day after he left the employ of the appellants but did not solicit the trade of the former customers.

And the trial court, they assert, improperly construed the terms of the bill of sale reserving to Aleck the right to solicit "former" customers of the firm for business. This plain language, say the appellants, cannot mean that Aleck Burdusis was permitted to solicit customers who were at the time of the sale patronizing the Stone Linen Supply Company. Since the clause was inserted by Aleck, any uncertainty should be interpreted most strongly against him, and the word "former" literally and strictly construed so as to confine Aleck's right of solicitation to those persons who at one time, but not at the date of the sale, were customers of the partnership. Furthermore, the appellants assert, the express requirement that Aleck Burdusis transfer his interest in the four route books of the Stone Linen Supply Company to his associates indicates that there was no intention to allow him the right to solicit the current customers of the firm. Yet another provision in the bill of sale, the transfer by Aleck to the appellants of the good will of the business, is inconsistent with any interpretation allowing him to solicit such customers. And even though the court may not adopt their construction of the bill of sale, yet in any event, argue the appellants, the law will not permit an employee to quit his employer and use confidential information to draw off his former employer's customers, and the trial court therefore erred in refusing an injunction against Tom Burdusis.

In reply to these contentions, the respondents claim that the

names of the customers served by Tom Burdusis for the Stone Linen Supply Company were not a "trade secret," but that the customers served by Tom on his route were all retail dealers whose shops are recognizable by anyone and whose identities and addresses can be readily ascertained by observation, or by reference to telephone or business directories. Under the findings made by the trial court that the respondents received no confidential information or trade secrets from the appellants and did not conspire or injure the appellants in their business, together with the finding that Aleck Burdusis had paid a valuable consideration for the right to solicit customers of the appellants and that the route served by Tom was neither written nor oral, but was acquired by the respondents and kept in their memory, the respondents assert that no other judgment than the one in their favor could be sustained. And although the evidence upon which these findings were based may be conflicting, since they are supported by substantial evidence, they may not be disturbed on appeal. In addition, the respondents suggest, the questions involved have become moot because in the intervening years since the respondents left the partnership, customers have been exchanged and routes altered. Moreover, insist the respondents, damages are not permissible in this type of action.

It is well settled in California that after an employee who worked on a retail delivery route has left the service of his employer, his use of the customer list to solicit business for another person is an unwarranted disclosure of trade secrets. Under such circumstances, a court of equity will enjoin not only the solicitation of the customers of the first employer but also the acceptance of any orders from them. (*Empire Steam Laundry* v. *Lozier,* 165 Cal. 95 [130 P. 1180, Ann. Cas. 1914C, 628, 44 L.R.A. N.S. 1159]; *Cornish* v. *Dickey,* 172 Cal. 120 [155 P. 629]; *New Method Laundry Co.* v. *MacCann,* 174 Cal. 26 [161 P. 990, Ann. Cas. 1918C, 1022]; *Pasadena Ice Cream Co.* v. *Reeder,* 206 Cal. 697 [275 P. 944, 276 P. 995]; *Santa Monica Ice etc. Co.* v. *Rossier,* 42 Cal.App.2d 467 [109 P.2d 382]; *Mackechnie Bread Co.* v. *Huber,* 60 Cal.App. 539 [213 P. 285].) However, where the customers are wholesale buyers whose names appear in directories, and they are so few in number that anyone might readily discover them, it has been held that the employer's list is not secret and confidential information. (*Avocado Sales Co.* v. *Wyse,* 122 Cal.App. 627 [10 P.2d 485]; and see *Gloria*

*Ice Cream & M. Co.* v. *Cowan,* 2 Cal.2d 460, 464. [41 P.2d 340].)

The rule of *Avocado Sales Co.* v. *Wyse, supra,* has, however, been expressly limited by subsequent decisions of this court. It "is not merely the knowledge of the identity of the customers, but the friendly contact with them which is important to the solicitors. . . ." Their personal acquaintance with customers and knowledge of "their respective places of residence, their peculiar likes and fancies and other characteristics, a knowledge of which would greatly aid them in securing and retaining the business of said former customers," is sufficient to invoke equitable protection against the subsequent use by a former employee of such information. (*Dairy Dale Co.* v. *Azevedo,* 211 Cal. 344 [295 P. 10].)

And the list of customers, not ordinarily entitled to judicial protection, may become a trade secret, if there is confidential information concerning the value of these customers. Thus in *Scavengers' Protective Association* v. *Serv-U-Garbage Co.,* (218 Cal. 568 [24 P.2d 489]), although most of the persons in a particular district were served by the former employer and consequently the identity of the customers might easily be ascertained by anyone, the defendants had acquired, during the course of their employment for the plaintiff, a knowledge of the salvage value of the refuse of the residents served by them. The use of this information, said the court, to underbid their former employer constituted an improper use of confidential information and amounted to unfair competition. And although the court in *Gloria Ice Cream etc. Co.* v. *Cowan, supra,* assumed that, since the customers on the milk route there in question consisted of restaurants, bakeries, markets, grocery stores and like concerns and were listed in public directories, their names were not trade secrets, yet the deliberate separation of the employee from his employment and use of whatever information he had gained as an agent for the purpose of injuring his former employer's business were unfair tactics which equity would not tolerate.

As a customer list within the rules expressed may exist in the memory of the employee as well as in writing (*Avocado Sales Co.* v. *Wyse, supra*), the finding that no route book ever existed for the customers of the appellants served by Tom Burdusis is not determinative of the appellants' rights. Tom Burdusis testified that he carried in his mind his list of customers, and they are as easily identified as those in the cases of *Avocado Sales Co.* v. *Wyse, supra,* and

*Gloria Ice Cream etc. Co. v. Cowan, supra.* It is true that in these two cases wholesale routes were involved and the customers were retailers, but this fact does not make the patrons more available to discovery by a competitor than the persons solicited by these linen supply companies. As found by the trial court, "every butcher shop and market whose clerks wear aprons, is a potential customer of a linen supply company, and a legitimate object of its solicitation, and any person of normal intelligence can seek out and find such potential customers." Therefore, unless the facts upon which the present action is based bring the appellants within the limitations to the rule announced in *Avocado Sales Co. v. Wyse, supra,* the customer list was not a trade secret, and Tom Burdusis was free to solicit his former customers without restriction.

Concerning the rights of the parties in this proceeding, the trial court found that the "business of serving customers is purely personal to the route man, and is obtained and held chiefly as a matter of friendly feeling between the customers and the man on the route, and ninety (90%) per cent of the customers on the route of defendant Tom Burdusis do not know either of the plaintiffs." Obviously, the friendly contact Tom had with his customers would be an influencing factor in soliciting their business for a new employer. And by leaving the employment of the appellants without giving them a list of the customers which he had acquired during the time he was working for them and who were still using the supplies of the partnership, he took from them an interest which equity will protect. His later solicitation of these customers for another employer would therefore constitute unfair competition within the rule stated in *Dairy Dale Co. v. Azevedo, supra.*

The question of principal importance then is: Did Tom Bardusis solicit former customers of the appellants for Aleck Burdusis? In his testimony, Tom admitted that he accompanied his brother in the supply truck on the Saturday when Aleck called upon the customers whom he ordinarily saw on Monday. Tom also said he told some of them he was now working for his brother. But he and Aleck insisted that all of the solicitation was done by the latter. Assuming that the trial court believed this testimony, the solicitation by Tom alone of his former customers during the following week may not be similarly explained. On Monday, he testified, he went alone on his usual Tuesday route, "be-

cause we started the route on Saturday." In soliciting business for Aleck, Tom said, "I walked in the place and told them I was no longer with the Stone Linen Supply Company, I was working for my brother and if they would give me the business I would appreciate it."

From Tom's testimony, it appears that of the 145 customers of the Stone Linen Supply Company served by Tom who changed their patronage to Aleck's business, eight had been solicited by Aleck before Tom left the appellants' employ, five were secured by Aleck before Tom got around to them while working for his brother, 35 were obtained on the Saturday expedition, and 97 were secured through Tom's individual solicitation. Four of these customers subsequently retransferred their patronage to the appellants, he stated. In view of these admissions of the respondent Tom Burdusis, the finding that "it is not true that defendant Aleck Burdusis has succeeded by or through any efforts of his said brother Tom Burdusis in taking from plaintiffs, or either of them, their customers, or any of them" is not supported by the evidence.

But the respondents insist that because Aleck Burdusis had reserved the specific right by contract to solicit the customers of the appellants, he could employ someone to do it for him. This contention requires an analysis of the reservation in the bill of sale. The construction suggested by the appellants, limiting the right of Aleck to solicit only customers of the partnership who had discontinued their patronage prior to the date of the sale by Aleck of his interest in the business, must be rejected as placing too strained an interpretation upon the word "former." Unquestionably, by the words "former customers," the vendor referred to all customers of the partnership which was terminated by Aleck's withdrawal from it. And although the sale of the good will of the business ordinarily carries with it the expectation on the part of the vendee of continued public patronage (Bus. & Prof. Code, § 14100), this implied obligation of the vendor not to directly solicit former customers was expressly modified by the reservation in the bill of sale of such a right. This provision is also superior to any implication to the contrary arising from the transfer of Aleck's interest in the four route books.

But what is the extent of the right so reserved? Obviously Aleck may solicit the customers of the appellants by any legitimate means open to a competitor. And he may,

either personally or by an agent, endeavor to secure the business of those persons whom he remembers to have been customers of the partnership when he was a member of it. But he has no right to use for that purpose a former employee of the appellants, who, in that capacity, sold to the persons he now wishes to secure as customers, the linen service of his competitor. For the additional influence of the friendly contact of the former employee with the persons whose business he would carry to his new connection brings the solicitation within the condemnation of unfair competition. Not only should the employee be enjoined from the solicitation of his former customers, but the court's order should prohibit the new employer from obtaining the benefits of such an unfair practice, thereby making the remedy of the former employer effective and complete. (*Pasadena Ice Co.* v. *Reeder, supra; Gloria Ice Cream etc. Co.* v. *Cowan, supra; Langendorf United Bakeries* v. *Phillips, supra; Santa Monica Ice etc. Co.* v. *Rossier, supra.*)

The fact that some years have passed since this proceeding was commenced does not require its dismissal, as the respondents assert. Although courts will refuse to determine an abstract question which does not rest upon existing facts as presenting a moot case, the respondents' bare assertion that the routes in controversy are now quite different than they were at the time of trial and many customers have been exchanged constitutes no basis for such an order.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., and Schauer, J. pro tem., concurred.

Respondents' petition for a rehearing was denied November 30, 1942.