[Civ. No. 13691. Second Dist., Div. Three. Jan. 25, 1943.]

JOHN BARNES et al., Appellants, v. GERALD W. CAHILL, Respondent.

William E. Empey for Appellants.

No appearance for Respondent.

SHAW, J. pro tem.—The plaintiffs have appealed from a part of the judgment in an action brought by them to obtain an injunction.

The respondent has filed no brief and made no argument. That being so, we are not required to engage in legal research or critical examination of the record to find an answer to appellants' arguments. We have, however, considered the record, in connection with the points made, and conclude that a reversal must be ordered.

In the amended complaint on which the case was tried plaintiffs set up two causes of action. The first alleged that plaintiffs were engaged in the business of making weekly newspaper matrices containing "current news and information concerning Hollywood, the motion pictures, events and personalities," under the title "Hollywood Today" and of selling these matrices to various newspapers and theaters. The business was conceived and developed by plaintiff Barnes, who had, before the action was brought, sold it to plaintiff Tobin, retaining a thirty per cent interest in its profits. Plaintiffs were doing business under the names "Hollywood Features Syndicate" and "Hollywood Today." Defendant Cahill, having become familiar with this business and plaintiffs' mode of conducting it, undertook to engage in the same business, and was preparing to do so under the names "Hollywood Features Syndicate" and "Hollywood Now" and to issue matrices under the names "Hollywood Now" or "This Week in Hollywood," or other name tending to mislead the public. He was preparing to make and issue weekly matrices of the same general appearance, style and arrangements as those of plaintiffs and containing substantially the same subject matter, which would deceive and mislead the public and plaintiffs' customers, thus appropriating much of plaintiffs' business. The second cause of action, in addition to the foregoing allegations, stated that defendant Cahill had been employed and acted as manager of plaintiffs' business and while so employed had become familiar with plaintiffs' list

of customers, which was a confidential trade secret, and was engaged in soliciting their patronage for his enterprise. We do not state the allegations of the complaint in detail, but each count appears to be sufficient to state a cause of action. The defendant in his answer admitted that he intended to engage in a business similar to that of plaintiffs, under the name ''This Week in Hollywood,'' but denied the other allegations of the complaint.

The trial court made findings confirming the plaintiffs' allegations regarding their business, and stating that defendant was intending to engage and was engaged in business under the names ''Hollywood Features Syndicate'' and ''This Week in Hollywood'' but was not, since July 15, 1941, intending to use the name ''Hollywood Now.'' Other findings will be mentioned later. Judgment was ordered enjoining the use by defendant of the name ''Hollywood Features Syndicate'' and denying plaintiffs any other relief. The judgment entered contained this injunction and also dissolved a preliminary injunction against the use by defendant of the name ''Hollywood Now.'' The appeal is from the whole of the judgment except that part containing the injunction.

The first cause of action is brought under the rule declared in *Weinstock, Lubin & Co.* v. *Marks,* (1895) 109 Cal. 529, 540 [42 P. 142, 50 Am.St. Rep. 57, 30 L.R.A. 182], and the many cases following it, that ''when one tradesman resorts to the use of any artifice or contrivance for the purpose of representing his goods or his business as the goods or business of a rival tradesman, thereby deceiving the people by causing them to trade with him when they intended to and would have otherwise traded with his rival, a fraud is committed—a fraud which a court of equity will not allow to thrive.'' At the trial there were put in evidence a mat produced by plaintiff and another prepared by defendant for use in his business. Examination of copies of them in the record indicates such a similarity as would make it easy for an intending customer to mistake one for the other. Defendant's mat was entitled ''This Week in Hollywood'' while that of plaintiffs bore the title ''Hollywood Today,'' but undoubtedly the word ''Hollywood'' is the important part of each. An entire identity in the wording of a defendant's packages, wrappers, labels and titles with those of a plaintiff is not necessary to bring this rule of law into play. See *Modesto Creamery* v. *Stanislaus etc. Co.,* (1914) 168 Cal. 289,

294 [142 P. 845]. The trial court found, in the case at bar, that the use by defendant of the title "This Week in Hollywood" would not tend to deceive or mislead plaintiffs' customers. Plaintiffs contend that this finding is not supported by the evidence. We need not so hold because a reversal is necessary for other reasons. At least, a finding the other way would have been well supported.

The trial court found that the defendant did not intend to use the name "Hollywood Now." There was in evidence an affidavit made by him in opposition to the application for a temporary injunction, in which he admitted his intention to use that name. He denied such intention in his answer. There appears to be no evidence in support of the denial. The finding lacks support. Abandonment of such intention after the issuance of a temporary injunction against it should not save him from a permanent injunction. Plaintiffs offered evidence of later declarations by defendant of his intention to use the name "Hollywood Now," and evidence of acts of preparation to use that name made just before suit was brought, but the trial court excluded them. This was error, and in view of the finding it was obviously prejudicial.

The trial court found, in regard to the second cause of action, that defendant was engaged in soliciting plaintiffs' customers, but that he had never been manager of plaintiffs' business, and that it was not true that plaintiffs entrusted him with trade secrets and confidential information. There is no express finding on the allegation that defendant learned the names and addresses of plaintiffs' customers and the amount of business done with each, the prices and their credit rating. The evidence shows that defendant's first connection with plaintiffs' business was as a supplier of mats used therein. These mats were sold to plaintiff Barnes, who was then the owner of the business, on credit and he was unable to pay for part of them. He and defendant then agreed, in July, 1940, that defendant would continue to furnish mats on credit on condition that defendant be permitted to keep said plaintiffs' books, and handle the office management and the collection of all receipts. This arrangement was carried out and continued for several months. The plaintiff spent considerable time, effort and money in promoting the enterprise and secured some customers. Obviously, defendant must have become familiar with their names and addresses and the nature of the business done with them. It is equally obvious

that this was confidential business information of plaintiff Barnes, and that the plaintiffs, as his successors, were entitled to protection against its use by defendant in soliciting business for himself, since defendant obtained it in confidence (*Pasadena Ice Co.* v. *Reeder,* (1929) 206 Cal. 697, 703 [275 P. 944, 276 P. 995]; *Langendorf United Bakeries* v. *Phillips,* (1936) 5 Cal.2d 150, 153 [53 P.2d 363]). It may be that the evidence does not show that defendant was plaintiffs' general manager, as alleged, but he was at least engaged to act in plaintiffs' business in such capacity that while so acting he acquired the knowledge of plaintiffs' customers which he now seeks to use for his own advantage. The principle of the cases just cited is applicable to him whether he be a manager or employed in some other capacity. "It is the wrongful use by the employee of the business secrets of the employer which the courts have held constitutes the injury to the employer." (*Pasadena Ice Co.* v. *Reeder, supra.*) Indeed, the same principle applies, where there is a misuse of business information confidentially acquired, even though the relation of the parties is not that of employer and employee at all. (*Hollywood M. P. Equipment Co.* v. *Furer,* (1940) 16 Cal.2d 184, 188 [105 P.2d 299].) The fact that defendant was a creditor of plaintiff Barnes does not avert the application of the rule to him.

In July, 1941, plaintiff Barnes sold the business to plaintiff Tobin, retaining an interest in the profits. This was done by a written agreement dated July 14, 1941, to which defendant was also a party, and the trial court seems to have regarded this agreement as some sort of a settlement with defendant by plaintiffs, which prevented them from complaining of anything done by defendant before it was made or proving any such acts in support of their complaint, and to have based its rulings excluding evidence on this theory. But the agreement, as far as it affected defendant, merely provided that the ·purchase price for which Barnes sold the business to Tobin, $2,000, should be paid by the latter to defendant, that defendant would accept it as full satisfaction of all his claims against Barnes, and that defendant warranted to Tobin that all bills in reference to the business had been paid, reciting also that defendant had acted as agent and manager for Barnes from July 15, 1940, to May 26, 1941. There is nothing in this agreement authorizing defendant to engage in unfair competition with plaintiffs, or to use

the information he had obtained while managing the business, and it does not constitute a settlement of any claims plaintiffs had against him for such matters, or bar this action in any way.

The part of the judgment appealed from is reversed and the cause is remanded for a new trial of all issues relating thereto.

Shinn, Acting P. J., and Wood (Parker), J., concurred.