[Civ. No. 16293.   Second Dist., Div. Two.   June 29, 1948.]

DELUXE BOX LUNCH & CATERING CO., INC., Appellant, v. BEN BLACK et al., Respondents.

436

Victor S. Cogen for Appellant.

Chase, Rotchford, Downen & Chase for Respondents.

MOORE, P. J.—No judgment of dismissal having been entered, plaintiff brings this appeal from the minute order for a judgment of nonsuit.

For more than 27 years appellant and its predecessors in interest operated a box lunch and catering business and manufactured and sold food products and box lunches to employees of industrial establishments. In September, 1945, it employed respondent Black as one of its driver-salesmen and furnished him with a truck and box lunches wherewith he might call and make sales of such box lunches at factory "stops" during lunch periods. In September, 1946, appellant employed respondent Williamson who within a month left appellant's employ and became part owner of respondent California Box Lunch and Catering Company. About February 25, 1947, Black joined Williamson in the new enterprise after having terminated his employment with appellant by the service upon it of appropriate notice.

During his 17 months with appellant, Black serviced the establishments in the area assigned to him, including respondent Pacific Coast Borax Company, which had granted appellant leave to have its trucks with box lunches drive onto the premises of the borax company for the convenience of its employees.

Prior to the commencement of their operations and visits at the plant of the borax company, Black and Williamson obtained permission from the two superintendents to enter the company's premises to sell food and box lunches to the employees. At the same time that company terminated appellant's license to enter its premises for the purpose of selling its wares.

By this action plaintiff sought to have Black permanently enjoined from delivering food products and box lunches to the employees of the borax company and to have the latter and respondents Hollosy and Williamson, suppliers of Black, permanently enjoined from aiding and abetting Black in his sales to the employees of such company. The correctness of the resulting order of nonsuit is demonstrated by the authorities.

■ There can be no dispute of appellant's basic contention that on appeal from a judgment of nonsuit all the evidence, the intendments and every reasonably favorable inference and the presumptions must be construed most favorably to the appellant. (*Montgomery* v. *Nelson,* 211 Cal. 497 [295 P. 1034]; *Fitzpatrick* v. *Haskell,* 117 Cal.App. 684 [4 P.2d 580]; *W. C. Cook & Co.* v. *White Truck & Transfer Co.,* 124 Cal.App. 721 [13 P.2d 549].) ■ But in this case neither the proofs nor the inferences arising therefrom support appellant's contention that respondents or any of them participated in unfair competition or misused trade secrets confidential to plaintiff.

The testimony of the superintendent of appellant as well as of the borax company establishes that permission to enter the premises of the latter was a prerequisite to selling to its employees. It was within the power of the borax company to give, refuse or retract this license or permission at will. No claim is made by appellant that it had a continuing contractual right to enter the premises, but on the contrary, the proof shows that on two occasions in 1946, plaintiff was excluded therefrom and that at times competitors of plaintiff were permitted to enter. Superintendents O'Brien and Chetlee testified also that as early as 1945, they had concluded to discontinue the services of appellant.

Superintendent O'Brien of the borax company testified: "The quality of the food was down, and we had received complaints from our employees. . . . At times when De Luxe Box Lunch was there, their wagon would be sold out by the

time they got to our plant.'' The same witness testified that permission was granted to Black in February, 1947, to enter the company's premises and serve its employees only on condition that the food be of a greater variety, improved quality and larger quantities than he had brought for appellant; also that service should be made on Saturdays, which had been discontinued by appellant. Both superintendents testified that defendant Black did not request borax company to terminate the services of plaintiff company but that Black merely promised better service and was therefore permitted to serve its employees. There was no substantial proof contrary to the foregoing.

Appellant cites many California decisions in which former salesmen had been restrained from soliciting customers of former employers. They are readily distinguishable. In *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95 [130 P. 1180, Ann.Cas. 1914C 628, 44 L.R.A.N.S. 1159], the contract of hiring contained an express provision that the employee would not solicit customers after termination of his employment. Although the doctrine there expressed is that of trade secrets, the court's rationale of that doctrine is unfair competition. In discussing the same case the court subsequently said: ''The employee's conduct under the facts shown, clearly constituted an . . . unwarranted use of trade secrets belonging to his former employer as well as violation of the contract he had entered into.'' (*New Method Laundry Co.* v. *Mac-Cann,* 174 Cal. 26, 34 [161 P. 990, Ann.Cas. 1918C 1022].)

In the instant case appellant had, along with other caterers, sold in the area for a number of years, and Black as appellant's employee had sold in open competition with all who might seek to sell a better product. For this reason the names of appellant's alleged customers cannot be deemed a trade secret or constitute confidential information. (*Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104, 109 [48 P.2d 9].) Furthermore, the only names known to appellant consisted of industrial establishments which admittedly were not appellant's customers. On the contrary it was the employees thereof who patronized Black. The evidence shows no listing, actual or mental, of such employees. The proof was that the latter could buy from only those caterers officially admitted to the premises.

In all the California decisions relied upon for a reversal a trade secret or trust had been violated. Lists of customers, whether in writing or in the memory of an employee, were

secret, and a trust reposed in the employee because of his relation to his former employer. Such authorities (*Empire Steam Laundry* v. *Lozier, supra; Cornish* v. *Dickey,* 172 Cal. 120 [155 P. 629] ; *New Method Laundry Co.* v. *MacCann,* 174 Cal. 26 [161 P. 990, Ann.Cas. 1918C 1022] ; *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697 [275 P. 944, 276 P. 995] ; *Mackechnie Bread Co.* v. *Huber,* 60 Cal.App. 539 [213 P. 285] ; *George* v. *Burdusis,* 21 Cal.2d 153 [130 P.2d 399]) do not avail appellant. Nor is appellant's action one where the element of secrecy of the customer's identity is either absent or minimized, but is one wherein relief is granted on the doctrine of unfair competition, as in *Wallich* v. *Koren,* 80 Cal.App.2d 223, 226 [181 P.2d 682] ; *Dairy Dale Co.* v. *Azevedo,* 211 Cal. 344, 345 [295 P. 10] ; *Scavengers' Protective Ass'n* v. *Serve-U-Garbage Co.,* 218 Cal. 568, 570 [24 P.2d 489] ; *Gloria Ice Cream & Milk Co.* v. *Cowan,* 2 Cal.2d 460, 464 [41 P.2d 340]. The judgment herein is authorized by the intermediate concept where there is no trade secrecy, no unfair competition. (*Avocado Sales Co.* v. *Wyse,* 122 Cal.App. 627 [10 P.2d 485] ; *Continental Car-Na-Var Corp.* v. *Moseley, supra.*)

Unless some violation of fiduciary relation is definitely in issue there is no equitable principle warranting the use of the injunction as an economic lever against the enterprise of a former employee. The mere fact that the establishment of its business required effort and expense does not of itself entitle the employer to the shield of legal monopoly.

There is no evidence in the record to substantiate appellant's contention that respondents conspired unlawfully to interfere with, or deprive plaintiff of, its trade and customers, or that the alleged customers' list of appellant was confidential or that it was a trade secret.

The order is affirmed.

WILSON, J.—For the reasons hereinafter stated I concur in the affirmance of the judgment of the trial court.

Elements are present in this action that are not found in the usual customer list cases and those involving unfair competition. In such actions the salesmen or deliverymen visit the homes and places of business of their customers; they have the opportunity of conversing freely with them, of obtaining personal and intimate knowledge of the desires and demands of the customers, and are able to supply their needs, to discuss their complaints and to make changes in the service when requested. Any salesman may, without hindrance, so-

licit business for his employer from the customers of a rival manufacturer or producer. All this may be done freely and without the necessity of obtaining permission from anyone.

Not so in the instant case. In this case free contact with the consumers of the lunches could not be had. It was necessary for plaintiff or any other vendor to have permission of the borax company in order that his salesmen or deliverymen might enter the plant and sell lunches to the company's employees. Such permission was granted, withheld and terminated at the pleasure of the company, and when granted the company imposed such terms and conditions as it deemed proper. Black's knowledge of the desires of the company's employees was not obtained through unrestricted intercourse with them, as is the case when dealings are had directly with householders or other consumers. Plaintiff did not have a monopoly of the business or an irrevocable permit to enter the plant. Other food vendors than plaintiff and its salesmen had been admitted to the borax company's premises on occasions previous to the granting of permission to plaintiff.

The customers, employees of the borax company, could not cease purchasing from plaintiff at will and patronizing another vendor since none other than plaintiff was permitted on the premises until the occurrence which led to this action. Thereafter they could not, if they would, purchase plaintiff's lunches, for it was excluded from contact with them.

The superintendent of the borax company's plant was called as a witness on behalf of plaintiff and testified that he had required, as a condition of plaintiff's permit to enter the plant, that hot lunches would be provided for the men and that lunches would be served on Saturdays as on other days; that plaintiff had failed to comply with those conditions; that service was not given on Saturdays; that hot food was not always provided; that the employees complained that the quality of the food furnished by plaintiff was not good; that frequently when plaintiff's truck reached the plant the food would be sold out. For these reasons the witness revoked plaintiff's permit to enter the company's plant.

At the same time Black and his new employer were granted permission to enter the plant and to serve the employees on condition that the food provided would be better in quality and variety than that which had been served by plaintiff and that other conditions which plaintiff had not complied with would be fulfilled. Black told the superintendent that he was leaving the employment of plaintiff and going into business

for himself or with another vendor. The superintendent of the plant, testifying as plaintiff's witness, said that Black asked permission to serve the employees but that he did not request that permission be denied plaintiff. As far as Black's request went, plaintiff was to be left in competition with him and his new employer. However, the assistant superintendent notified plaintiff that its permission to enter the plant was terminated.

Although through his service of food to the company's employees Black obtained knowledge of their desires, his information was not of such a confidential nature as it would have been if it had been acquired in the free contact with them in the open market that is had in the ordinary "route" cases, since he and plaintiff were circumscribed in their dealings with their customers by the fact that permission of the borax company was a prerequisite to the solicitation of the employees. There is no evidence that Black's entry into the employment of another caterer injured plaintiff since the superintendent and assistant superintendent of the borax company testified that they had long contemplated severing the company's relations with plaintiff for the reasons above outlined. There is no evidence that Black solicited service in his new employment in any place of business other than that of the borax company.

This case is not governed by the rules found in the "route" cases wherein customers are regularly served by a deliveryman with milk, ice and other commodities. In such cases a business relationship is established between the customers and the owners of the business through the latters' employees and it will be assumed that such relationship will continue. In the instant case there was no such certainty of plaintiff's retention of its customers by reason of the fact that the permission of the borax company could be revoked at will and by reason of the continuing possbility that it would be revoked. Upon the happening of such contingency plaintiff's contact with its consumer-customers would be terminated and as to them its market would be lost without any intrusive act of its former employees.

The "route" cases are different from the instant case in another particular: the names and addresses of customers in such cases have been held to be valuable and confidential trade secrets of the employer whenever an employee has attempted to make use of them for the benefit of himself or of

any person other than his employer. This is so for the reason that the customers are visited and served by the employee at their homes and places of business. In the instant case the knowledge of the names and addresses of the borax company's employees who purchased lunches was of no value whatsoever to plaintiff since such employees were visited only at the plant where they were employed and then only by permission.

Nothing said in *Gloria Ice Cream & Milk Co.* v. *Cowan,* 2 Cal.2d 460 [41 P.2d 340], is contrary to the view herein expressed. That was a ''route'' case differing from the cases cited in the opinion of the Presiding Justice only in respect of the service rendered. In those cases retail delivery routes were in question, while in the Gloria case the plaintiff sold in wholesale quantities to restaurants, grocery stores, markets and like establishments. Although the names of the Gloria company's customers were not trade secrets, since they were listed in classified directories and their places of business could be observed by any person who traveled on the streets of the city, nevertheless the knowledge of their desires and requirements as to quantities, quality and varieties of milk, ice cream and other dairy products which the defendant had obtained through his daily delivery of his employer's commodities to them, was a trade secret and information of a valuable and highly confidential character belonging to his employer which an employee had no right to use for the benefit of himself or of his new employer.

The evidence produced by plaintiff furnishes defendant's defense to the action.

McCOMB, J.—I dissent. I regret that I find myself unable to agree with the conclusions of my learned brethren. It appears to me that in substance both of the foregoing opinions are identical, the only difference being in verbiage. The point stressed in an effort to differentiate the instant case from the rule announced in *Gloria Ice Cream & M. Co.* v. *Cowan,* 2 Cal.2d 460, 464 [41 P.2d 340], *Wallich* v. *Koren,* 80 Cal.App. 2d 223, 226 [181 P.2d 682], and *George* v. *Burdusis,* 21 Cal. 2d 153 [130 P.2d 399], is that in the instant case the consumer was dissatisfied with the merchandise being supplied by plaintiff, and this fact in some way is a palliative for the wrongful conduct of defendant; while in the cited cases the customers were satisfied with the merchandise furnished by the respective defendants' competitors.

In my opinion the gist of the cause of action in this and the cited cases is the wrongful act of defendant which is not cured and cannot be cured or obviated by the fact that the customer is pleased or displeased with the merchandise furnished him. I am also of the view that the opinions prepared by my illustrious associates fail to give full recognition to the present rule applicable upon the granting of a motion for a nonsuit. The evidence in the present case being viewed, as we must on a motion for a nonsuit, pursuant to the rules set forth in *Frederickson* v. *Kepner*, 82 Cal.App.2d 905, 907 [187 P. 2d 800], discloses that defendant Ben Black for more than one year prior to February 25, 1947, had been employed by plaintiff to solicit, sell and deliver perishable catered foods and box lunches daily to plaintiff's retail customers, some of whom were employees of the Pacific Coast Borax Company which is located at Wilmington, California.

Plaintiff furnished said defendant with a truck and box lunches which he was to sell and deliver to plaintiff's customers on the private premises of the borax company. Plaintiff paid for the entire upkeep and maintenance of the truck used by Mr. Black, who received a salary and commissions in excess of $100 per week during the time he was employed by plaintiff. The truck bore the sign, "DeLuxe Box Lunch," and labels on the sandwiches were, "DeLuxe Box Lunch & Catering Co."

During this period, plaintiff obtained permission for defendant Black to solicit, sell and deliver plaintiff's foods and box lunches on the premises of the borax company at times that coincided with the recess and lunch periods of plaintiff's customers. During said period defendant Black made the personal acquaintance of the customers, obtaining information as to their likes and fancies, and the varities, quantities and types of perishable catered foods and box lunches consumed. This information was of a highly confidential nature. Such information, as to the quantities of food, types and varieties thereof, and the preferences of the customers for the catered foods and box lunches, could be obtained only by actually soliciting and catering to them, and was a trade secret of great value to plaintiff, essential to the normal operation of its business.

On February 22, 1947, defendant Black was an employee of plaintiff and paid by plaintiff, and on such date he secured permission from the Pacific Coast Borax Company to enter

upon their private premises and to solicit and sell, and to deliver to its employees box lunches and catered foods prepared by defendants Lee Williamson and Albert Hollosy, doing business as the California Box Lunch and Catering Company, and to refuse permission to plaintiff to sell such foods on the premises.

Immediately thereafter, defendant Black sold and delivered to plaintiff's customers, employees of the borax company, box lunches and other catered foods prepared by the California Box Lunch and Catering Company. Defendants will continue such practice unless restrained by order of the court.

This is the sole question presented for determination:

*Do the foregoing facts constitute a prima facie case entitling plaintiff to an injunction restraining defendants from using the trade secrets obtained by defendant Black while in plaintiff's employ, and from soliciting the customers of plaintiff?*

This question must be answered in the affirmative and is governed by these pertinent rules:

An employee who has acquired trade secrets or valuable information of a confidential nature relating to his employer's business will be restrained from using such knowledge for the purpose of injuring his employer, and he will also be enjoined from soliciting his former employer's customers relative to whom he has obtained confidential information while acting as agent. (*Gloria Ice Cream & M. Co.* v. *Cowan,* 2 Cal. 2d 460, 464 [41 P.2d 340] ; *Wallich* v. *Koren,* 80 Cal.App.2d 223, 226 [181 P.2d 682].)

Discussing this rule Mr. Presiding Justice Moore in summarizing the decision in *George* v. *Burdusis,* 21 Cal.2d 153 [130 P.2d 399], accurately says in *Wallich* v. *Koren, supra,* "that in such cases the wrong to the former employer lies not only in the knowledge of the identity of the customers but also in the former employee's personal acquaintance with and knowledge of the customers and of their 'places of residence, their peculiar likes and fancies and other characteristics,' all of which mightily aids a solicitor to secure and retain the business of those he visited while in the service of his former employer." Mr. Justice Wilson likewise concurred in this statement.

Applying the foregoing rule to the facts in the instant case it is apparent that defendant Black used confidential information pertaining to the customers of plaintiff which

he had obtained while in plaintiff's employ for the purpose of soliciting said customers after he severed his contract of employment with plaintiff and entered into the employ of his codefendants. Therefore his acts fall squarely within the rule stated above, and plaintiff's evidence made a prima facie case in its favor entitling it to a denial of defendant's motion for a nonsuit, and an opportunity to have the case tried upon its merits.

In my opinion the judgment should be reversed.

A petition for a rehearing was denied July 15, 1948, and appellant's petition for a hearing by the Supreme Court was denied August 26, 1948.